ANNA W., on behalf of herself and all persons similarly situated, Plaintiff,

·v.

**Mary Jo BANE, individually and in her official capacity as Commissioner of the New York State Department of Social Services, Defendant.**

No. 92-CV-6257T.

United States District Court, W.D. New York.

Oct. 22, 1993.

126

Bryan D. Hetherington, Monroe County Legal Assistance Corp. and Ellen Yacknin and Cynthia Gill, Greater Upstate Law Project, Rochester, NY, for plaintiff.

Charles D. Steinman, Office of New York State Atty. Gen., Dept. of Law, Rochester, NY, for defendant.

### DECISION AND ORDER

TELESCA, Chief Judge.

Plaintiff, Anna W.,* filed this action under 42 U.S.C. § 1983 on June 15, 1992, seeking declaratory and injunctive relief with respect to several regulations promulgated by the New York State Department of Social Services ("DSS"). These regulations (18 N.Y.C.R.R. §§ 360–1.4(k) and 360.4–7(a)(1)) set forth the circumstances under which a home owned by an individual applying for or receiving Medicaid may be considered as an available resource for the purpose of determining eligibility for benefits. Plaintiff contends that these regulations violate 42 U.S.C. § 1396a(r)(2)(A) because they create a more restrictive resource standard than that used in the Supplemental Security Income ("SSI") program.

Plaintiff now moves for summary judgment, seeking various forms of declaratory

---

* The name "Anna W." is a pseudonym adopted in these proceedings in order to protect the ano- nymity of the Plaintiff.

and injunctive relief as well as costs and fees pursuant to 42 U.S.C. § 1988.

## FACTUAL BACKGROUND

The facts of this action are not in dispute. The plaintiff, Anna W., has been receiving periodic inpatient treatment for bi-polar or manic-depressive disorder at the Rochester Psychiatric Center ("RPC") since 1958. In 1985, she was admitted to RPC as an inpatient. At that time, her doctors considered that her prognosis for recovery was poor, and believed that she would most likely need inpatient hospitalization for the rest of her life. She was not permanently admitted to RPC, however, and had the status of "temporary inpatient" at RPC. She remained an inpatient until 1991, when her condition improved to the point that she could be placed in shared, unsupervised housing, returning to RPC for one full day and night per week for continuing treatment. During the 7½ years that plaintiff was an inpatient, she was occasionally placed in structured residential settings outside RPC.

Plaintiff owns a home with an approximate value of $60,000, where her son has lived from 1987 to the present. She has returned to this home relatively frequently during the years that she was an patient at RPC, although she has not resided there since 1985.

Plaintiff began receiving New York State Medical Assistance ("Medicaid") benefits in the summer of 1986, when she turned sixty-five. In April 1988, DSS notified the plaintiff that her benefits would be discontinued because her home counted as an excess resource and thus disqualified her from eligibility. She successfully challenged the original notice on the ground that she was given improper notice. After receiving proper notice of discontinuance, Plaintiff requested and was granted a fair hearing on the issue of the homestead exemption on January 7, 1992. Plaintiff testified at the hearing that she wanted to return to her home and that she intended to live at her home permanently when she fully recovered.

On February 12, 1992, the Commissioner's Designee issued an order affirming DSS, holding that plaintiff's "permanent absent status" from her home allowed DSS to count it as a resource. He noted that "[s]ince appellant is not residing in her property it has not regained its status as a homestead." He stated, however, that Plaintiff "testified that she is living one day at a time and would eventually like to return to the house, but did not know when she would be able to do this." Despite prevailing at this hearing, DSS has not discontinued plaintiff's benefits, although the decision of the Commissioner's designee entitles them to do so.

Ms. W.'s condition has since improved and she was discharged from the RPC in July, 1992. She has not returned to her home, but resides instead in an apartment with others in order to be close to treatment.

## DISCUSSION

Plaintiff moves for summary judgment, claiming that the actions and regulations of the State DSS violate the federal Medicaid statute by determining her home to be a non-exempt resource despite her intent to return, and thus requiring her to sell her home to maintain her eligibility for Medicaid.

### A

### CLASS ACTION

[1] Plaintiff seeks to bring this action as a class action seeking declaratory and injunctive relief on behalf of class members similarly situated. Although plaintiff filed an amended complaint styling this action as a class action, no motion for certification as a class action was brought by the plaintiff. The proposed class of plaintiffs, however, is the class of persons adversely affected by the application of the regulations at issue in this case.

Certification of a class in this action is unnecessary because only declaratory and injunctive relief is sought and, further, the relief granted will adequately and automatically benefit all members of the proposed class of plaintiffs. *Davis v. Smith,* 607 F.2d 535, 540 (2d Cir.1978) ("Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certifi-

cation of a class would not further the implementation of the judgment, a district court may decline certification.") *Cf. Galvan v. Levine,* 490 F.2d 1255 (2d Cir.1973), *cert. denied* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). I therefore decline certification of the proposed plaintiff class.

B

## SUBJECT MATTER JURISDICTION

Defendant attacks this court's subject matter jurisdiction to hear this action by claiming that the plaintiff "lacks standing" to assert her claim. She argues first that "at no time has the plaintiff been denied Medicaid benefits *as a result of the application of the homestead rule* contained in the regulations of the Department of Social Services." Defendant's primary argument is not one of standing, but of ripeness and mootness. Defendant claims that, because the regulation in issue has not been enforced against the defendant (*i.e.* she has never been forced to choose between her home and her Medicaid benefits), she has (in Defendant's words) "no standing" to bring the claim.

■ Defendant's ripeness argument ignores the administrative proceedings which form the background for this case. Plaintiff was given a Notice of Discontinuance, stating that her benefits would cease due to the application of the homestead rule. She successfully attacked that Notice. Soon afterward, she was presented with another Notice of Discontinuance on the same issue. She then requested a hearing where this rule was the sole issue. The Department's discontinuance was upheld by the Commissioner's designee. (Affidavit of Betty Rice, ¶ 6). This case follows directly from that decision.

■ The Defendant's active pursuit of its position that the Plaintiff's home is a countable resource directly threatens harm to the Plaintiff's interests. Were judicial review denied in this case, the Defendant would be free to withhold the benefits to which the Plaintiff is otherwise entitled based upon the application of the homestead rule. Nonetheless, Defendant insists that because this order and decision of the Commissioner's Designee has never been enforced against the

plaintiff, there has been no "actual or threatened injury". Her position is unsupported by the facts in this case and the applicable law.

■ A District Court does not lose its power to decide a case simply because a defendant has voluntarily ceased the challenged conduct. *Ahrens v. Bowen,* 852 F.2d 49, 52 (2d Cir.1988) (rejecting contention that challenge to HHS ruling was mooted when Secretary waived recoupment "by administrative grace"). While voluntary cessation might play a role in determining whether adjudication is appropriate, the question is not one of power, but of prudence. *Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074, 71 L.Ed.2d 152 (1982). In order for a dismissal on mootness grounds based upon voluntary cessation, the Defendant must show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968).

The Defendant must demonstrate that the challenged behavior will not recur. Ms. Bane has neither demonstrated a change in policy (thus making the application of the homestead rule unlikely), nor shown that the challenged situation could not reasonably arise again with respect to Ms. W. On this point, Defendant asserts that the case is moot because Plaintiff has been dismissed from RPC, and that she is thus no longer subject to the jurisdiction of New York State DSS. The Plaintiff still suffers from bi-polar disorder, however, and may well be readmitted to RPC, at which time she would be immediately faced with the consequences of DSS's application of this rule. It is reasonable to expect that the practice will be repeated precisely because of Ms. Bane's insistence on the regulation's validity. *See Ahrens,* 852 F.2d at 53. Judicial review is appropriate.

C

## THE REGULATIONS

■ The federal Medicaid statute mandates that DSS and Ms. Bane employ an

income and resource standard that is "no more restrictive" than the income and resource standards of the SSI program with regard to Ms. W. 42 U.S.C. § 1396a(r)(2)(A)(i). The standard for determining whether a state methodology is "no more restrictive" than the SSI program is set forth in 42 U.S.C. § 1396a(r)(2)(B), which states that a methodology is no more restrictive if, "using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance." *Id.*

The regulation which Ms. W. challenges in this action is principally 18 N.Y.C.R.R. § 360–1.4(k), which states that:

(k) *Permanent absence status* means that an individual is not expected to return home ... It will be presumed that an individual will not return home if:

(1) a person enters a skilled nursing or intermediate care facility;

(2) a person initially admitted to acute care and is then transferred to an alternative level of care, pending placement in a residential health care facility (RHCF);

(3) a person without a community spouse remains in an acute care hospital for more than six calendar months.

Competent medical evidence may overcome the presumptions set forth in paragraphs (1) through (3) of this subdivision.

This provision is applied through 18 N.Y.C.R.R. § 360–4.7(a)(1), which is part of a section that describes exemptions from income allowed in calculations of whether a Medicaid recipient is medically needy:

(1) a homestead which is essential and appropriate to the needs of the household. A homestead loses its exempt status if the owner is in a medical facility in permanent absence status as defined in section 360–1.4(k) of this Part, and no spouse, child under 21 years of age, certified blind or certified disabled child, or other dependant relative is living in the home....

Plaintiff asserts that these regulations conflict with the provisions of the SSI regula-

tions, 20 C.F.R. § 416.1212(c), which state that:

(a) *Defined.* A home is any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence. This property includes the shelter in which the individual resides, the land on which the shelter is located, and related outbuildings.

\*     \*     \*     \*     \*     \*

(c) *If an individual changes principal place of residence.* If an individual (and spouse, if any) moves out of his or her home without the intent to return, the home becomes a countable resource because it is no longer the individual's principal place of residence.... The individual's equity in the former home becomes a countable resource effective with the first day of the month following the month it is no longer his or her principal place of residence.

Plaintiff's allegation that the state regulations are more restrictive than the federal regulations is correct. 20 C.F.R. § 416.1212(c) bases the necessary determination upon whether there is a subjective intent to return by the claimant. This is different, and much less restrictive, standard than the state regulations provide. The State regulations establish presumptions that claimants will not return home based upon objective criteria (*i.e.* entrance into a nursing home or residence in an acute care facility for more than six months), which do not take into account the subjective intent to return. Although competent medical evidence can overcome these presumptions, the focus of the analysis is still upon objective "expectations" that claimants will return as opposed to the subjective "intent" that they return. Applying the standard set forth by Congress to determine whether the State regulations are "no more restrictive" than the federal regulations, the State regulations fail. Claimants who manifest an "intent" to return, yet cannot muster enough competent medical evidence to overcome the State's presumption that there is no "expectation" of returning, would be forced to chose between their house and their Medicaid benefits. For this rea-

son, the State regulations violate 42 U.S.C. 1396a(r)(2)(B).

This conclusion, although clear from the plain meaning of the regulations, is bolstered by the interpretation of the statute by the Health Care Financing Administration, which is given great deference. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2783, 81 L.Ed.2d 694 (1984). In a November 1991, letter to a DSS official, the Associate Regional Administrator of the Medicaid division stated the HHS interpretation of the regulations:

> * * * These guidelines hold that a home continues to remain as a principal place of residence, and therefore an exclusion, even if the individual is away from home but he/she *intends* to return to the home. The file must, of course, be documented with a signed statement to that effect and the statement is accepted without challenge unless it is self-contradictory.

This letter makes clear that the proper standard to be applied is a subjective "intent" standard, and not an objective "expectations" standard. It also demonstrates that the application of these regulations against Plaintiff was improper.

In the present case, Anna W. has indicated her subjective intent to return to her home when her condition has improved to the point that this is feasible. This intent is reflected in the Commissioner's Designee decision which indicates that the plaintiff "testified that she is living one day at a time and would eventually like to return to the house, but did not know when she would be able to do this." The inclusion of her home as a "countable resource" was improper in light of her manifested intent to return to this home.

### D

### RELIEF

■ Plaintiff seeks several forms of relief, including a declaratory judgment that New York State regulations 18 N.Y.C.R.R. §§ 360–4.7(a)(1) and 360–1.4(k) violate 42 U.S.C. § 1396a(r)(2)(A) because they create a more restrictive resource standard than that used in the SSI program. This declaratory judgment is **GRANTED** in favor of the Plaintiff.

Furthermore, the Defendant is **ORDERED** to cease applying these regulations to individuals, including Plaintiff, who are otherwise eligible for Medicaid until the regulations are amended to comply with the federal Medicaid statute and regulations.

The injunctive relief sought, *i.e.* that the defendant be enjoined from including Anna W.'s home as a countable resource and reinstating her eligibility for Medicaid, and that the defendant be enjoined from implementing the regulations at issue is denied as unnecessary in light of the relief provided above. Injunctive relief, of course, may be considered if it is necessary to enforce the provisions of this order.

Plaintiff's motion for costs and fees pursuant to 42 U.S.C. § 1988 is deferred pending proper application. Therefore, Plaintiff may make a motion, pursuant to 42 U.S.C. § 1988 for costs and reasonable attorney's fees to be considered separately. The Plaintiff should provide complete and appropriate documentation of its fees and costs at that time. Costs and fees for the proposed plaintiff class are denied in accordance with my decision to deny certification of the class.

### CONCLUSION

Anna W.'s statement of her intent to return to her home when she is well enough to do so is sufficient under the federal regulations to exclude her home from being counted as an excess resource. Therefore, the defendant cannot apply these regulations to individuals, including Plaintiff, who are otherwise eligible for Medicaid until the state regulations are amended to comply with the federal Medicaid statute and regulations.

ALL OF THE ABOVE IS SO ORDERED.