Berniece M. GROCE *v.* DIRECTOR, Arkansas Department of Human Services

CA 02-1274                    117 S.W.3d 618

Court of Appeals of Arkansas
Division II
Opinion delivered June 11, 2003

*Ed Daniel, IV*, for appellant.

*Ann West*, Office of Chief Counsel, for appellee.

L ARRY D. VAUGHT, Judge. This is an appeal from a Pulaski County Circuit Court order in which appellant's application for Medicaid nursing home benefits was denied. On

appeal, appellant asserts that appellee's hearing officer erred, as a matter of law, in refusing to allow her to claim a homestead exemption under 42 U.S.C. § 1382b(a)(1) (2000), and that the decision was not supported by substantial evidence. We disagree and affirm.

On December 4, 1997, appellant Berniece Groce signed a durable power of attorney in favor of her daughter, Pat Monroe. The durable power of attorney was filed on May 25, 2001. Also on May 25, 2001, appellant, through her daughter, purchased a life estate in her daughter's home at 125 W. Cloverdale in Brinkley, Arkansas, for $43,953.13. The offer and acceptance to purchase the life estate required that appellant pay all of the closing costs, including a $1000 attorney's fee. The deed, which in no way restricted appellant's right to sell her life estate, was also filed on May 25, 2001.

Appellant periodically stayed at the residence for short periods of time as a guest, but never occupied it as her principal place of residence. It is undisputed that appellant receives no income from the property. After the purchase of the life estate, appellant never took possession of the property, but thousands of dollars of her money were spent by her daughter from May 2001 through June 2001 for repairs and improvements to the home. The expenditures included landscaping, upgrading the air conditioning, and adding a patio, carport, and fence.

On July 5, 2001, appellant, through her daughter, applied to the Arkansas Department of Human Services (DHS) for nursing home benefits. At the time, appellant resided in Clay Cliff Nursing Home, where she moved in July 2000, and continued to reside at the time the briefs in this matter were filed. Prior to moving to Clay Cliff, appellant lived alone in an assisted-living complex for disabled and handicapped residents. Appellant, who suffers from Alzheimer's disease, was eighty-four or eighty-five at the time of the administrative hearing on December 14, 2001.

Appellee viewed the purchase of the life estate between appellant and her daughter to be a device through which to divest appellant of assets, without receiving value in return, for purposes of establishing Medicaid eligibility. Appellee found that appellant paid for a life estate from which she received no benefit because

she neither received possession nor rent from her daughter and grandson, who were in possession of the home and never vacated the property. Accordingly, the transaction was deemed to be an uncompensated transfer, and appellant's application for nursing home assistance was denied.

At the administrative hearing, appellant's daughter testified that she had lived at the home in question for approximately twenty-seven years, and did not move out after the sale of the life estate to appellant. Her adult son, Todd Monroe, age thirty-one at the time, testified that he also lived in the home. It is undisputed that neither Pat Monroe nor Todd Monroe is disabled. Additionally, neither is dependent on appellant, as each has his or her own income. Pat Monroe is a retired teacher who receives teacher retirement, social security benefits, and additional income from an unnamed source. Todd Monroe is a nurse and supports himself through a contract with the Arkansas Department of Health. He files his own income taxes and claims himself as a dependent. The hearing officer affirmed the agency's denial of benefits because the home was never appellant's principal place of residence, and the life estate therefore could not be excluded for purposes of Medicaid eligibility. The life estate was determined to be a countable resource in the estimated amount that the sale of the life estate would bring. That decision was affirmed on appeal to the Pulaski County Circuit Court, where the trial judge found that the decision of the hearing officer was supported by substantial evidence and was not arbitrary, capricious, or characterized by an abuse of discretion. From that order comes this appeal.

Before reaching the merits of appellant's arguments, we note that appellant failed to provide an abstract of the material parts of the record from the administrative hearing as required by Rule 4-2(a)(5) (2003) of the Arkansas Supreme Court and Court of Appeals. The abstract does not give an accurate picture of what transpired below or provide the information necessary to understand the questions presented to us. Additionally, the statement of the case is also deficient pursuant to the requirements of Rule 4-2(6) (2003) of the Arkansas Supreme Court and Court of Appeals because appellant failed to include page references to the abstract and addendum.

■ Failure to abstract an item essential to an understanding of the appeal has traditionally been regarded as a fatal error, which has been held to be an adequate basis to affirm for noncompliance with the abstracting rules. *See McNeil v. Lillard*, 79 Ark. App. 69, 86 S.W.3d 389 (2002). However, pursuant to Ark. Sup. Ct. R. 4-2(b)(3), which was modified by *In Re: Modification of the Abstracting System*, 345 Ark. Appx. 626 (2001) (*per curiam*), the court must now allow rebriefing before summarily affirming. However, in the instant case, appellee filed a supplemental abstract, which is sufficient to allow us to proceed with the merits of the case.

■ ■ Under the Administrative Procedures Act, our review is limited to ascertaining whether there is substantial evidence to support the agency's decision. *Arkansas Dep't of Human Servs. v. Thompson*, 331 Ark. 181, 959 S.W.2d 46 (1998). Decisions from an administrative appeal will be upheld if they are supported by substantial evidence and are not arbitrary, capricious, or characterized by an abuse of discretion. *McQuay v. Arkansas State Bd. of Architects*, 337 Ark. 339, 989 S.W.2d 499 (1999). To set aside an agency decision as arbitrary and capricious, the party challenging the action must prove that it was willful and unreasoned, without consideration and with a disregard of the facts and circumstances of the case. *See Partlow v. Arkansas State Police Comm'n*, 271 Ark. 351, 609 S.W.2d 23 (1980).

■ ■ Our scope of review is limited because administrative agencies are better equipped by specialization, insight, experience, and through more flexible procedures that occur to determine and analyze legal issues affecting their agencies. *McQuay, supra*. Additionally, the appellate courts refuse to substitute their own judgment for that of an agency. *See Arkansas Bd. of Reg. for Prof. Geologists v. Ackley*, 46 Ark. App. 325, 984 S.W.2d 67 (1998). It is not our role to conduct a de novo review of the circuit court proceeding; rather, our review is directed at the decision of the administrative agency. *Id.* When conducting our review, we look to the findings of the administrative agency, keeping in mind that courts have held that the hearing officer is in the best position to determine the credibility of witnesses and decide the proper weight to give the evidence. *Id.*

Appellant contends that pursuant to 42 U.S.C. § 1382b(a)(1) (2000), the life estate in the home in question should be excluded from resources when determining Medicaid eligibility. However, appellee maintains that from the facts of the case it appears that appellant's daughter sold appellant a life estate in the daughter's home, then spent thousands of dollars of appellant's money to improve the home in order to artificially impoverish appellant so that appellant would be eligible for Medicaid benefits.

Appellee points out that appellant has overlooked 20 C.F.R. § 416.1212(a) (2001), which defines the word "home" as follows:

> A home is any property in which an individual . . . . has an ownership interest and *which serves as the individual's principal place of residence.*

(Emphasis added.) Additionally, under DHS Medical Services Policy 3331.5(1)(a.) (Medical Services Manual, November 1, 1995), which lists resources which may qualify for exclusion under specific conditions, "home" is defined as "any shelter in which the individual . . . . has an ownership interest . . . . and *which is used by the individual . . . . as his principal place of residence.*" (Emphasis added.) In this case, the hearing officer found that the property in question was never appellant's principal place of residence.

Her daughter answered in the negative when asked if appellant had actually lived in the house and received mail there. She also testified that appellant had never moved in the residence or taken up residency, or given the nursing home notice that she was not returning from a visit. Occasional visits to the home after appellant purchased the interest did not convert the home into her principal place of residence. There was testimony that a nursing home resident may visit a home for as long as fourteen days, and no evidence was presented that appellant ever visited the property in question for a period of time longer than fourteen days.

The federal and state regulations are consistent in requiring a house to be an individual's principal place of residence before allowing it to be excluded as a homestead exemption. The fact that appellant signed an "intent to return" form does not negate this requirement — the house was never her principal place of residence to which she could "return." The evidence supports the hearing officer's finding that appellant's life estate in the resi-

dence remained a countable resource because the house was not her principal place of residence.

Appellant also argues that the hearing officer erred in finding that appellant's daughter and grandson were not dependent on the residence in question for shelter. Medical Services Policy section 3331.5 (1)(b) allows the alleged dependency of a relative to be verified if there is a question about the status. In verifying whether there was such a dependency, the hearing officer obtained testimony from appellant's daughter that: (1) she had lived in the residence for twenty-seven years; (2) she is not disabled; (3) she supported herself; (4) she is a retired teacher who receives teacher retirement; (5) she also receives social security benefits and income from other unnamed sources. Appellant's grandson testified that he was thirty-one years old, not disabled, and worked as a nurse for the Arkansas Department of Health. The hearing officer determined that there was no evidence that either appellant's daughter or grandson were dependent on the residence in question for shelter, other than the fact that they lived there at the time of the hearing.

■ ■ It is the prerogative of the agency to believe or disbelieve any witness and to decide what weight to give the evidence. See *Arkansas State Police Comm'n v. Smith*, 338 Ark. 354, 994 S.W.2d 456 (1999). In order to establish an absence of substantial evidence, appellant is required to demonstrate that the proof before the administrative tribunal was so nearly undisputed that fair-minded persons could not reach the arrived-upon conclusion. The question is not whether the testimony would have supported a contrary finding, but whether it supported the finding that was actually made. See *City of Hector v. Arkansas Soil & Water Comm'n*, 47 Ark. App. 177, 888 S.W.2d 312 (1994).

■ ■ Medicaid is a payor of last resort, and is intended to supplement, not supplant other potential sources of payment. Ark. Code Ann. § 20-77-101(a) (Supp. 1999). Our supreme court has cited that statute with approval, declaring that it is only after the individual has exhausted his or her own resources that the taxpayers are to assume the financial burden of an individual's necessary medical care. See *Arkansas Dep't of Human Servs. v. Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993). Based on our review, the evidence

shows that appellant, albeit through her relatives, was attempting an end-run around the purpose of the statute. Substantial evidence has been defined as valid, legal and persuasive evidence that a reasonable mind might accept as adequate to support a conclusion, and force the mind to pass beyond conjecture. *See Van Curen v. Arkansas Prof. Bail Bondsman Licensing Bd.*, 79 Ark. App. 43, 84 S.W.3d 47 (2002). There was substantial evidence to support the hearing officer's decision. Accordingly, we affirm.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.