Tarris WOODS, Appellant,

v.

Rusty LEGG, Appellee.

No. 01–10–00888–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 11, 2011.

Anthony P. Griffin, Anthony P. Griffin Inc., Galveston, TX, for Appellant.

Barbara Elliott–Roberts, William S. Helfand, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, BLAND, and MASSENGALE.

## OPINION

JANE BLAND, Justice.

Tarris Woods, who had been an incumbent Galveston City Councilmember, lost a close runoff election to Rusty Legg. Woods brought an election contest under section 221.003 of the Texas Election Code, challenging the vote count on the grounds that officials prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake. *See* Tex. Elec.Code Ann. § 221.003 (West 2010). Following a bench trial, the trial court denied the contest, entered findings of fact and conclusions of law, and confirmed that the election results declaring Rusty Legg the winner.

On appeal, Woods challenges the trial court's ruling, claiming that it erred in refusing to order a new election. He contends that he presented clear and convincing evidence that (1) election officials mistakenly assigned some District 1 residents to districts outside of the voting area and (2) officials erred in preventing eligible voters from casting their votes in his favor. We conclude that the trial court did not abuse its discretion in rejecting the chal-

lenge because sufficient evidence supports its findings. We therefore affirm.

## Background

The general election for District 1 Galveston city councilmember took place in November 2009. A little more than a year before, Hurricane Ike had devastated the island and displaced many of its residents. Particularly hard-hit were lower-income residents who lived in public housing or rental properties. Many of these residents lived in District 1, located on the eastern side of the island. Although Woods and Legg were the top two vote-getters in the November contest, neither commanded a majority of the vote, and thus a run-off election became necessary.

The June 19, 2010 runoff vote resulted in 209 votes for Legg and 200 votes for Woods, including one provisional ballot counted for Woods. During the bench trial, the trial court heard evidence from witnesses who, according to Woods, were aggrieved voters and from Galveston County Tax Assessor–Collector and Voter Registrar Cheryl Johnson. Following the presentation of evidence, the trial court confirmed the certified election results in favor of Legg as the true outcome of the election.

## Discussion

### I. Burden of Proof and Standard of Review

An election contest is a special statutory proceeding that provides a remedy for elections tainted by fraud, illegality or other irregularity. *Blum v. Lanier*, 997 S.W.2d 259, 262 (Tex.1999); TEX. ELEC. CODE ANN. §§ 233.003–233.014 (West 2010). It "includes any type of suit in which the validity of an election or any part of the elective process is made the subject matter of the litigation." *Rossano v. Townsend*, 9 S.W.3d 357, 362 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

To set aside the outcome of the runoff election, Woods bore a burden to prove by clear and convincing evidence that violations of the Election Code materially affected the election's outcome. *Price v. Lewis*, 45 S.W.3d 215, 218 (Tex. App.-Houston [1st Dist.] 2001, no pet.); *Olsen v. Cooper*, 24 S.W.3d 608, 610 (Tex. App.-Houston [1st Dist.] 2000, no pet.); *Slusher v. Streater*, 896 S.W.2d 239, 241 (Tex.App.-Houston [1st Dist.] 1995, no writ). An outcome of an election is "materially affected" if a different and correct result would have been reached in the absence of Election Code violations. *Olsen*, 24 S.W.3d at 610. The clear and convincing standard requires more proof than the preponderance of the evidence standard in ordinary civil cases, but less than the reasonable doubt standard in criminal cases. *Id.; In re K.C.M.*, 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). This standard is the degree of proof that produces in the factfinder a "firm belief or conviction" as to the truth of the allegations sought to be proved. *K.C.M.*, 4 S.W.3d at 395.

With this burden in mind, we review the record in an election contest to determine whether the trial court abused its discretion. *Price*, 45 S.W.3d at 218. We "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex.2002). We disregard "all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* at 266. We cannot, however, disregard contrary evidence that the factfinder could not ignore. *City of Keller v. Wilson*, 168 S.W.3d 802, 817, 830 (Tex. 2005).

In a bench trial, the trial court determines the credibility of the witnesses and

the weight to be given their testimony. *Woods v. Woods,* 193 S.W.3d 720, 726 (Tex. App.-Beaumont 2006, pet. denied); *see also City of Keller,* 168 S.W.3d at 819. In resolving factual disputes, the trial court may believe one witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986). In making these credibility determinations, the factfinder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller,* 168 S.W.3d at 820. However, if the factfinder could reasonably believe the testimony of one witness or disbelieve the testimony of another witness, an appellate court "cannot impose [its] own opinions to the contrary." *Id.* at 819.

## II. Election Contest

### A. Governing statute

■ Under section 221.003 of the Texas Election Code:

(a) The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the election contest, as shown by the final canvass, is not the true outcome because:

(1) illegal votes were counted; or

(2) an election officer or other person officially involved in the administration of the election:

(A) prevented eligible voters from voting;

(B) failed to count legal votes; or

(C) engaged in other fraud or illegal conduct or made a mistake.

TEX. ELEC.CODE ANN. § 221.003. A contestant may prove the need for a recall election either by showing that individual voters—in a number that would change the outcome of the election—cast legal votes for the contestant that were not counted, or by showing that the illegal votes (or the improperly prevented votes) exceed the margin of victory. *See* TEX. ELEC.CODE ANN. §§ 221.003(a)(2)(A), 221.009 (West 2010); *Miller v. Hill,* 698 S.W.2d 372, 375 (Tex.App.-Houston [14th Dist.] 1985), *writ dism'd,* 714 S.W.2d 313 (Tex.1986).

### B. Voter eligibility

#### 1. Residence

The resolution of this appeal, in large part, turns on the meaning of the term "residence." The Texas Election Code defines "residence" as "one's home and fixed place of habitation to which one intends to return after any temporary absence." TEX. ELEC.CODE ANN. § 1.015(a) (West 2010). The determination of residence must accord "with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code." TEX. ELEC.CODE ANN. § 1.015(b). The Election Code further provides that: "A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only." TEX. ELEC.CODE ANN. § 1.015(c). Conversely, "[a] person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home." TEX. ELEC.CODE ANN. § 1.015(d).

■ Whether a person is a resident depends on the "circumstances surrounding the person involved and largely depends upon the present intention of the individual." *Mills v. Bartlett,* 377 S.W.2d 636, 637 (Tex.1964). The determination of residence for voting purposes centers on both the person's expression of intent to remain at, or return to, the alleged residence, as well as the circumstances that led to their presence or absence and those tending to show that the person is likely to remain at or return to the alleged residence. *See Speights v. Willis,* 88 S.W.3d

817, 819 (Tex.App.-Beaumont 2002, no pet.) ("Whether a person is a resident depends on the circumstances surrounding the person involved and largely depends upon the present intention of the individual.") (internal quotation omitted). "Volition, intention, and action are all elements to be considered in determining where a person resides, and such elements are equally pertinent in denoting the permanent residence or domicile." *Slusher,* 896 S.W.2d at 244. Conduct such as where a person sleeps and keeps personal belongings may support factors such as presence and intent. *Mills,* 377 S.W.2d at 637. One element alone is insufficient to establish residency; the elements must form a nexus to fix and determine a residence. *Id.*

 When a person's statements regarding residence are inconsistent with other evidence showing actual residence, "such statements 'are of slight weight' and cannot establish residence in fact." *In re Graham,* 251 S.W.3d 844, 850 (Tex.App.-Austin 2008, no pet.) (quoting *Texas v. Florida,* 306 U.S. 398, 424, 59 S.Ct. 563, 576, 83 L.Ed. 817 (1939)). On appeal, we are limited to determining whether the trial court's credibility determinations were reasonable. *See City of Keller,* 168 S.W.3d at 819–20; *McDuffee v. Miller,* 327 S.W.3d 808, 820 (Tex.App.-Beaumont 2010, no pet.)

### 2. Registration and change of residence

To be eligible to vote, an individual also must comply with voter registration requirements, including timely notification of any change of address or the need to update other information. *See* Tex. Elec. Code Ann. § 15.021, 15.112 (West 2010). "[I]f the registrar has reason to believe that a voter's current residence is different from that indicated on the registration records, the registrar shall deliver to the vot-

er a written confirmation notice requesting confirmation of the voter's current residence." Tex. Elec.Code Ann. § 15.051(a) (West 2010). If the voter fails to respond and provide written confirmation of the voter's current residence within thirty days, the voter:

(A) is subject to submission of a statement of residence before the voter may be accepted for voting in an election held after that deadline; or

(B) for a notice [delivered after return of the registration renewal certificate], the voter will remain subject to submission of a statement of residence before the voter may be accepted for voting in an election. . . .

Tex. Elec.Code Ann. § 15.052(a)(1) (West 2010). The registrar maintains a "suspense list" of voters who fail to send a timely response to a request for confirmation of current residence. *Id.* § 15.081. In preparing the voter rolls, the registrar "shall enter the notation 'S', . . . on the list of registered voters beside each voter's name that also appears on the suspense list." *Id.* § 15.111(a). If a voter appears to vote in a precinct where the voter's name is on the suspense list, and the voter satisfies the residence requirements and completes a statement of residence form, the voter may vote. *See id.* §§ 15.112, 63.001, 63.011.

Throughout his brief, Woods complains that, in the aftermath of the hurricane, the change of address notification requirement unfairly and disproportionately affected some displaced residents of District 1. He does not, however, attack the validity of the statutory requirement. The plain language of the Election Code makes these residence verification procedures mandatory.

### III. Analysis

#### A. Lists of voters assigned to the wrong precinct or district

■ Woods first contends that the trial court abused its discretion in failing to credit the evidence he presented to show that the outcome of the election was not the true outcome because of the Galveston County election officials' mistakes in assigning some of the voters who belonged in Precinct 309—within District 1 in the city of Galveston—to Precinct 339 in Dickinson, which was not involved in this runoff election. *See* TEX. ELEC.CODE ANN. § 221.003(a)(2)(C). To support this contention, Woods provided the district court with lists, compiled from registrar records, of (1) 20 District 1 registered voters who mistakenly were assigned to precinct 339 and (2) 93 registered voters who provided the city's Salvation Army, located in District 1, as their residential address, whom the registrar mistakenly had assigned outside the runoff election area, to District 3.

The record does not contain testimony from any of these registered voters. No evidence shows that they remained residents of District 1 on the runoff date. Many of them did not cast votes in the runoff election. Woods notes that seven of the voters assigned to precinct 339 and four of the voters assigned to District 3 actually voted, but he did not show whether they would have voted for him had they been assigned to District 1. In its findings, the trial court credited this evidence along with Woods' own testimony on the matter:

> Woods' testimony permits an inference that he believes that homeless voters, minorities, and public housing residents were wrongfully moved out of District 1 and that this caused the election to come out the way it did. While some evidence might have supported this belief had it been produced, the evidence that was produced at trial did not rise to the level of clear and convincing proof that any single qualified registered voter was deprived of a vote for the candidate of his choice in the June 19, 2010 runoff.

■ The trial court did not abuse its discretion in reaching this conclusion. "The law is well settled that irregularities in the conduct of an election which cannot be shown to have materially affected the results of the election are immaterial." *Kennelly v. Gates*, 406 S.W.2d 351, 358 (Tex.Civ.App.-Houston 1966, no writ).

■ Woods contends that the trial court should have declared the election void without a showing of how the individual voters voted, as permitted under section 221.009(b) of the Election Code, because the evidence showed that "the number of illegal votes is equal to or greater than the number of votes necessary to change an election's outcome." TEX. ELEC.CODE ANN. § 221.009(b); *see Green v. Reyes*, 836 S.W.2d 203, 209 (Tex. App.-Houston [14th Dist.] 1992, no writ); *Medrano v. Gleinser*, 769 S.W.2d 687, 688–89 (Tex.App.-Corpus Christi 1989, no writ). The statute, however, expressly leaves the discretion to make such a declaration to the trial court. *See* TEX. ELEC. CODE ANN. § 221.009(b) (providing that "the tribunal *may* declare the election void without attempting to determine how individual voters voted") (emphasis added). Based on the evidence before it, the trial court did not abuse its discretion in refusing to exercise that authority.

## B. Testimony of individual voters

Woods also contends that the trial court erred in holding that he failed to present clear and convincing evidence to show that certain allegedly aggrieved voters, named below, were eligible to vote and wrongfully denied the opportunity to vote in his race. We address each challenge in turn.

■ **Angelina Archangel** testified that she was resident of LaMarque, having moved there after Hurricane Ike. According to the trial court's findings, and as the record supports, Archangel admitted that

she had no present plan to return to Galveston. She stated, however, that when she does return, she plans to reside in District 1. Archangel was not listed as a registered voter when she tried to vote in the District 1 runoff election because the voter roll erroneously showed her as assigned to Precinct 339 in Dickinson. Archangel cast a provisional ballot for Woods. The ballot review board rejected Archangel's provisional vote on the basis that Archangel did not have an effective registration for the election. The trial court concluded that no clear and convincing evidence showed that Archangel was qualified and registered to vote in the runoff. The evidence supports the trial court's conclusion that Archangel was not an eligible voter because she was not a resident of District 1 at the time of the runoff election, and she evidenced no present intent to return to the district.

■ **Ruth Ouzenne** testified that when she went to cast her vote in the District 1 runoff, the voter registration list showed an "S" by her name. She was told that she would have to complete a new registration card, but declined, saying that she was already registered. Voter Registrar Johnson explained that the "S" indicates that the tax assessor-collector's notice was returned as undeliverable, and the evidence established that Ouzenne had changed her address but had not notified the registrar of her change of address. According to Johnson's testimony, election officials may ask the voter to complete either a statement of residence form or use a voter registration form to collect the same information. Ouzenne chose to forgo completing another registration form, and she left the voting location without further inquiry.

Woods complains that change of residency is not a proper ground for cancellation of Ouzenne's registration. Suspension pending collection of a statement of resi-

dence, however, is not the same thing as cancellation. *Compare* Tex. Elec.Code Ann. §§ 15.081, 63.001, 63.0011 (providing suspension and statement of residence procedures before voter may cast vote) *with id.* §§ 16.001–16.0332 (identifying grounds and procedures for cancellation of registration). At trial, Ouzenne admitted that it was her own decision not to complete the registration card and that she had no reason to believe that, had she completed the card, she would not have been given a provisional ballot. The evidence does not show improper conduct by election officials, merely that Ouzenne declined to comply with a request to update her information and chose not to vote. The trial court did not abuse its discretion in concluding that Woods failed to present clear and convincing proof that an election worker wrongfully denied Ouzenne the opportunity to vote in the runoff.

■ **Annie Lee Smith** testified that she requested and received a mail-in ballot. She noticed that the ballot she received was for District 2, not District 1. Smith testified that she sent the ballot back unmarked in the envelope provided. On the runoff date, she appeared in person to vote in the District 1 race, but precinct officials told her told that she could not vote because she already had voted by mail. The city secretary testified that she received Smith's mail-in ballot on June 4, and that receipt of the mail-in ballot counted as a vote regardless of whether it was marked.

Smith was aware of the mistake when she received the District 2 ballot. Returning the ballot caused the problem. Once a ballot is sent in a sealed envelope, the early voting ballot board receives and processes the ballots according to specifically prescribed procedures. *See* Tex. Elec.Code Ann. §§ 86.005(e), 87.021, 87.041. The voter must also adhere to

specific procedures in attempting to cancel a ballot. *See id.* § 84.032. The evidence shows that Smith did not follow the necessary procedures to cancel her mailed-in ballot. The trial court did not abuse its discretion in concluding that Smith was not eligible to vote in the District 1 runoff.

**Rosa Patterson** did not testify. Galveston City Secretary Barbara Lawrence testified that, like Smith, Patterson was improperly placed in District 2 and forwarded a District 2 mail-in ballot instead of the District 1 ballot. The election records show that Patterson's mail-in ballot also was received and recorded. The record does not indicate whether Patterson was aware that she cast her ballot in the District 2 race rather than the District 1 runoff or whether she intended to vote for Woods. The trial court did not abuse its discretion in concluding that Woods failed to show by clear and convincing evidence that Patterson was prevented from voting for the candidate of her choice.

**Charles Southern** testified that he did not live at San Jacinto Elementary School, the address shown on his registration card. Before Hurricane Ike, Southern resided in housing within District 1, but he could not return home after the storm. By the time of trial, Southern had signed a lease with the Galveston County Housing Authority confirming that he resided at an address in District 2. The trial court did not abuse its discretion in finding that Southern was not eligible to vote in District 1 at the time of the runoff election.

**Lutishie Hayes** testified that she went to a polling location to vote for Woods but was not allowed to vote. The evidence shows that Hayes had two different identification numbers for the State of Texas, and had used a third number on her voter registration application. As a result, the election officials were unable to verify the proper identification number. Hayes's application, she admitted, was in-complete, and she did not correct the application. Woods contends that the election officials wrongfully prevented Hayes from voting because they should have promptly challenged her eligibility for registration and failed to do so in time for her to correct the error. The statute, however, requires the voter to ensure that accurate registration information is provided. *See* Tex. Elec.Code Ann. § 15.021(a). The application for registration requires either the applicant's state-issued identification number or the last four digits of her social security number. Hayes's application contained neither. The evidence supports the trial court's conclusion that Hayes was statutorily eligible at the time of the runoff election.

**Doris Scott** testified that she lived in Texas City and Houston after being displaced by Hurricane Ike and had not lived in Galveston for the two years preceding the runoff election. At the time of trial, she lived in Houston and worked in Texas City, and had no present plan to return to Galveston. She nevertheless traveled to Galveston to vote in the District 1 runoff. Like Ouzenne, the election officials had placed an "S" by her name, which indicated that an updated address was required. Scott ultimately was told that she could not vote because she lived in Houston. The trial court did not abuse its discretion in finding that Scott was not an eligible District 1 voter on the runoff election date.

**Terrion Sharper** did not testify. The successful candidate in the District 2 race, Linda Kay Colbert, testified that she had helped Sharper register. Sharper told Colbert that she would mail it, but the evidence did not show whether she did so timely. Sharper's mother testified that her daughter was not allowed to vote. This testimony does not support Woods' burden to prove by clear and convincing

evidence that Sharper was eligible to vote in the runoff election or that an election worker wrongfully prevented her from voting.

 **Shirley Grice Anthony** testified that she voted in the general election and completed a card showing her change of address, but was not permitted to vote in the District 1 runoff election because her new registration address was in District 6. Anthony expressed her wish to have remained in her rented home in District 1, but she had no definite plans to return to District 1. The trial court acted within its discretion in determining that the evidence did not establish that Anthony was a qualified registered voter in District 1 at the time of the runoff.

**Ashley Smith and Kimberly Smith,** Anthony's grandnieces, had grown up in her rented home in District 1 and still considered their home to be with Anthony. According to Anthony, they were attending college in Houston and planned to return to Galveston to vote in the District 1 runoff until Anthony told them that she was unable vote in the election because of her change of address. Neither Smith testified. The evidence supports the trial court's conclusion that Ashley and Kimberly were not statutorily eligible to vote in District 1 at the time of the runoff election, nor does the record demonstrate their intent to vote in the election or any denial of the intent to vote.

Many of the trial court's findings depended on its assessment of the witnesses' credibility and the weight to give their testimony, which we do not revisit on appeal in light of some evidentiary support for that assessment. *See City of Keller*, 168 S.W.3d at 819. We hold that the trial court acted within its discretion in upholding the certified election result after concluding that Woods did not bear his burden to prove by clear and convincing evidence that, but for election official misconduct, he would have won the runoff election.

## Conclusion

We hold that the trial court did not abuse its discretion in confirming that the certified election results declaring Rusty Legg the winner reflected the true outcome of the election. We therefore affirm the judgment of the trial court.