# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00462-CV

---

**Texas Health and Human Services Commission, Appellant**

**v.**

**Estate of Clyde L. Burt, Linda S. Wallace, Executor, and Linda S. Wallace, Appellees**

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-000044, THE HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

---

## O P I N I O N

The Texas Health and Human Services Commission appeals from the trial court's order in a suit for judicial review brought by appellee Linda S. Wallace, individually and as executor of the Estate of Clyde L. Burt. The trial court reversed the Commission's Administrative Review Decision (the Decision) and remanded the matter to the Commission for further proceedings.[1] We affirm the trial court's order.

## BACKGROUND

According to Wallace's initial brief filed in the trial court, her parents, Clyde and Dorothy Burt, bought a home in 1974. They lived in that home until December 22, 2010, when they sold it to Wallace and her husband, Robby Wallace, and moved into a rental property owned by the Wallaces. In early August 2017, the Burts entered a skilled-nursing facility, and on

---

[1] The trial court also dismissed appellees' request for declaratory judgment for want of jurisdiction, but appellees do not complain of that dismissal.

August 21, 2017, they bought from the Wallaces a one-half interest in the home to "secure home equity in a home that they could return to if one or both of them should be able to leave the nursing home." The same day, they filled out a Commission form designating the home as their place of residence and indicating an intent to return. After that purchase, the Burts had about $2,000 remaining in their bank accounts. On September 26, 2017, the Burts sought benefits through Medicaid[2] effective September 1, 2017. That application was denied on March 7, 2018, due to a finding of "resources in excess of program limits" after the Commission included the home as a countable resource. Clyde died on November 17, 2017, and Dorothy died on January 11, 2018, never having left the nursing facility and leaving a debt of $23,479.35 to the facility.

Wallace appealed the Commission's decision, and both a hearings officer and a Commission Legal Services Attorney upheld the denial. She then sought judicial review, arguing that the home should have been excluded from the Burts' countable resources. The trial court agreed, ruling (1) that the Commission's interpretation of the applicable rule "to require a Medicaid applicant or recipient to establish prior occupancy of a principal place of residence in order to exclude the equity value of a home for Medicaid eligibility purposes" was unreasonable and (2) that the Commission's findings based on that interpretation were therefore not reasonably supported by substantial evidence. The court reversed the Commission's decision and remanded the case for further proceedings.

---

[2] Although Medicare provides medical insurance coverage for people over sixty-five, it generally does not cover long-term care in a nursing facility. *See What is the difference between Medicare and Medicaid?*, U.S. Dep't of Health & Hum. Servs., https://www.hhs.gov/answers/medicare-and-medicaid/what-is-the-difference-between-medicare-medicaid/index.html (last visited Apr. 1, 2022); *How can I pay for nursing home care?*, medicare.gov, https://www.medicare.gov/what-medicare-covers/what-part-a-covers/how-can-i-pay-for-nursing-home-care (last visited Apr. 1, 2022).

## STANDARD OF REVIEW AND LEGAL FRAMEWORK

When reviewing an administrative decision under the substantial-evidence standard, we presume that the agency's decision is supported by substantial evidence, and the party challenging the decision has the burden of proving otherwise. *Texas Comm'n on Env't Quality v. Maverick County*, __ S.W.3d __, No. 19-1108, 2022 WL 413939, at *7 (Tex. Feb. 11, 2022); *Texas Health Facilities Comm'n v. Charter Med.-Dall., Inc.*, 665 S.W.2d 446, 453 (Tex. 1984); *Poole v. Karnack Indep. Sch. Dist.*, 344 S.W.3d 440, 443 (Tex. App.—Austin 2011, no pet.). An agency's decision is supported by substantial evidence if reasonable minds could have reached the same decision, *Poole*, 344 S.W.3d at 443, meaning that "if there is evidence to support either affirmative or negative findings on a specific matter, the decision of the agency must be upheld," *Charter Med.*, 665 S.W.2d at 453. Although the evidence must amount to more than a mere scintilla, "the evidence in the record may preponderate against the agency decision and still amount to substantial evidence." *Poole*, 344 S.W.3d at 443.

The construction of a statute, on the other hand, "is a question of law we review de novo," and we generally will uphold an agency's interpretation of a statute it is charged with enforcing, provided that "the construction is reasonable and does not conflict with the statute's language." *Sirius XM Radio, Inc. v. Hegar*, __ S.W.3d __, No. 20-0462, 2022 WL 879704, at *4 (Tex. Mar. 25, 2022) (quoting *Railroad Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625 (Tex. 2011)). However, "a court must always endeavor to decide for itself what the statutory text means so that it can determine whether the agency's construction contradicts the statute's plain language." *Id*. (citing *Maverick County*, 2022 WL 413939, at *4). Moreover, deference to an agency's construction "is appropriate only when the statutory language is ambiguous." *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404–05

(Tex. 2016); *see Texas Citizens*, 336 S.W.3d at 625 (judicial deference to agency's construction of statute is tempered by several considerations, including that statutory language "must be ambiguous"). As the supreme court has explained:

> It is true that courts give some deference to an agency regulation containing a reasonable interpretation of an ambiguous statute. But there are several qualifiers in that statement. First, it applies to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions [in a court brief]. Second, the language at issue must be ambiguous; an agency's opinion cannot change plain language. Third, the agency's construction must be reasonable; alternative unreasonable constructions do not make a policy ambiguous.

*Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747-48 (Tex. 2006).

In determining the resources of an individual applying for Medicaid services,[3] the Commission excludes the applicant's home, 42 U.S.C. § 1382b(a)(1), which is defined as "any property in which an individual (and spouse, if any) has an ownership interest and which serves as the individual's principal place of residence," including "the shelter in which an individual resides, the land on which the shelter is located and related outbuildings," 20 C.F.R. § 416.1212(a) (2022) (Exclusion of the home);[4] 1 Tex. Admin. Code § 358.103(38), (69) (2022) (Tex. Health & Hum. Servs. Comm'n, Exclusion of a Home) ("home" is "structure in which a person lives" and "all adjacent land . . . in which the person has an ownership interest and that

---

[3] The methodology used in Medicaid calculations must be no more restrictive than that used in Social Security calculations, 42 U.S.C. § 1396a(r), and a "methodology is considered to be 'no more restrictive' if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance," *id*. § 1396a(r)(2)(B).

[4] The Commission "follows 20 CFR § 416.1212 regarding the treatment of a home" and excludes from an applicant's resources the value of "a home that is the principal place of residence of an applicant" or the applicant's spouse if the applicant "occupies or intends to return to the home." 1 Tex. Admin. Code § 358.348(a)(1) (2022) (Tex. Health & Hum. Servs. Comm'n, Exclusion of a Home).

4

serves as his or her principal place of residence," which is "[t]he home where a person resides, occupies, and lives").

**DISCUSSION**

In Wallace's suit for judicial review, she argued that the home should have been excluded from the Burts' countable resources because the Burts had an ownership interest and considered the home to be their principal place of residence. 42 U.S.C. § 1382b(a)(1). The trial court agreed, determining that the Commission's interpretation of its applicable rule, 1 Tex. Admin. Code § 358.348, "to require a Medicaid applicant or recipient to establish prior occupancy of a principal place of residence in order to exclude the equity value of a home for Medicaid eligibility purposes" was unreasonable. The Commission complains of that ruling, arguing that the Burts' half-interest in the home was properly included as a resource because they bought that half-interest after they entered the nursing facility and thus cannot be viewed as intending to "return" there.

The Commission "follows 20 C.F.R. § 416.1212 regarding the treatment of a home" and its exclusion from an applicant's assets, 1 Tex. Admin. Code § 358.348(a)(1) (2022) (Tex. Health & Hum. Servs. Comm'n, Exclusion of a Home), and uses its Medicaid for Elderly and Persons with Disability Handbook (MEPD Handbook) to calculate assets, *see Medicaid for the Elderly & People with Disabilities Handbook*, Texas Health & Hum. Servs. Comm'n, www.hhs.texas.gov/handbooks/medicaid-elderly-people-disabilities-handbook (last visited Apr. 1, 2022). The Handbook provides that a home can be excluded if the applicant or the applicant's spouse has "ownership interest in the property" and "reside[s] in the property while having ownership interest," *id*. at F-3000, www.hhs.texas.gov/book/export/html/4501 (last visited

5

Apr. 1, 2022), and that a home can be excluded if the applicant or spouse "has ownership interest in the property and the property currently is the principal place of residence of either the person or the spouse," *id*. at F-3100. The Commission asserts that the definitions and requirements set out in the Handbook "come directly from Section 416.1212," specifying that subsection (a) imposes "concurrent ownership and 'principal place of residence' requirements."

Subsection (a) defines "home" as a property in which the applicant "has an ownership interest and which serves as the individual's principal place of residence" but does not define "place of residence." 20 C.F.R. § 416.1212(a). For that definition, the Commission references the federal Program Operations Manual System (POMS), which is "a primary source of information used by Social Security employees to process claims for Social Security benefits." POMS Home, Social Security, secure.ssa.gov/apps10/ (last visited Apr. 1, 2022).[5] POMS defines "place of residence" as "the dwelling the individual considers his or her established or principal home and to which, if absent, he or she intends to return." POMS SI 01130.100.A.2, secure.ssa.gov/apps10/poms.nsf/lnx/0501130100 (last visited Apr. 1, 2022). The POMS sections that discuss "[h]ow to develop absences from the home" note that the "'Intent to return' development applies only to the **continued** exclusion of property which met the definition of the individual's **home** prior to the time the individual left the property," *id*. SI 01130.100.C.7.c, and the Commission relies on that language to conclude that because "the Burts did not own a home

---

[5] "Although the POMS is not published in the Federal Register, and does not have the force of law, it is entitled to persuasive authority." *Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y. 1994); *see Contreras v. Barnhart*, No. CV H-05-3141, 2006 WL 8450447, at *2 (S.D. Tex. Aug. 21, 2006), *report and recommendation adopted*, No. CV H-05-3141, 2006 WL 8450448 (S.D. Tex. Sept. 11, 2006, order) (citing POMS); *Henson v. Texas Health & Hum. Servs. Comm'n*, No. 03-13-00621-CV, 2015 WL 6830677, at *4 n.6 (Tex. App.—Austin Nov. 5, 2015, no pet.) (mem. op.) (considering guidance provided in POMS).

when they entered the nursing facility, they had no excludable home to which they could 'intend to return.'"

In our analysis, however, we cannot ignore that the "principal place of residence" references rely on the applicant's subjective intent. For instance, POMS states that an individual's principal place of residence is the place that individual "*considers* his or her established or principal home," *id*. SI 01130.100.A.2 (emphasis added), and the decision-making agency may not consider factors such as the applicant's age or physical condition or the likelihood of the applicant's actual return, *id*. SI 01130.100.E.3. Section 416.1212(c) provides that a home continues to be excluded even if an applicant leaves it "to live in an institution," as long as he intends to return to that home after being discharged. 20 C.F.R. § 416.1212(c). And courts considering an applicant's eligibility for public benefits have held that "the proper standard to be applied is a subjective 'intent' standard, and not an objective 'expectations' standard." *Anna W. v. Bane*, 863 F. Supp. 125, 130 (W.D.N.Y. 1993); *see Staar v. Colvin*, No. 2:14-CV-00033-REB, 2017 WL 760732, at *4-5 (D. Idaho Feb. 25, 2017) (mem. dec. & order) (remanding for consideration of applicant's "understood intent to sell the Arizona Residence for the purposes of purchasing a new residence in Idaho" and whether intent affected claim for benefits); *Inglese v. Nirav Shah*, 121 A.D.3d 688, 691 (N.Y. App. Div. 2014) ("While it may very well be that the petitioner's home was listed for sale prior to the execution of the contract of sale, no evidence was adduced at the fair hearing as to the precise date on which the home was listed for sale and, thus, the petitioner's intent to return was determinative of that issue, at least until the contract of sale was executed."); *see also Ball v. Colvin*, No. CV-2012-01574-PHX-BS, 2013 WL 5886604, at *6 (D. Ariz. Oct. 31, 2013, order) (although applicant testified that he considered one of two properties located in Illinois to be his "residence," he was living in

7

another state and had lived there for several years, both properties were occupied by renters at time of administrative hearing, and applicant "did not express an 'intent to return' to either of the Illinois properties during the administrative hearing"; thus, determination that neither of two Illinois properties was applicant's principal place of residence was supported by substantial evidence); *Doyle v. Barnhart*, No. 00-C-643-C, 2002 WL 32349787, at *4 (W.D. Wis. Dec. 13, 2002) (op. & order) (discussing applicant's intent to return home and noting evidence indicating his subjective intent to trade properties with mother).[6]

Since there are no relevant Texas appellate decisions regarding "intent to return," we will consider the decisions of Travis County district courts (as they have sole trial court jurisdiction for these cases in Texas) and commentators in our analysis. In a 2008 letter written in a similar case, District Judge Stephen Yelenosky noted that the "intent to return" language, including the POMS caution that the "'Intent to return' development applies only to the continued exclusion of property which met the definition of the individual's home prior to the time the individual left the property," SI 01130.100C.7.c, "appears in the federal rules only with respect to one's state of mind upon changing or leaving a principal place of residence." *Estate of Seffer v. Texas Health & Hum. Servs. Comm'n*, No. D-1-GN-08-000790, 419th District Court of Travis County, Texas (Dec. 16, 2008 letter ruling). In the letter explaining his ruling, Judge Yelenosky explained that because Seffer had been living in an apartment when he moved into

---

[6] Further, in the context of determining "the meaning of the term 'residence'" as used in the election code, our sister court has observed (1) that "[w]hether a person is a resident depends on the 'circumstances surrounding the person involved and largely depends upon the present intention of the individual,'" and (2) that the determination of residence "centers on both the person's expression of intent to remain at, or return to, the alleged residence, as well as the circumstances that led to their presence or absence and those tending to show that the person is likely to remain at or return to the alleged residence." *Woods v. Legg*, 363 S.W.3d 710, 714 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (quoting *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex. 1964)).

the nursing home, he had no "home" at that time as defined by Medicaid rules.  Judge Yelenosky observed that although the rules explain how a homeowner applicant can sell his home and use that money to buy another home without losing the home exclusion, they do not address the situation in which an applicant who is renting or otherwise lacks an excludable "home" buys a home after entering a nursing facility.  Judge Yelenosky reasoned that an individual who rents before entering a facility will be at least as "needy" as if he was a homeowner upon entry and that such an individual will be in the same need of a home upon his discharge from the institution.  He stated that "[i]f Congress had intended to require prior occupancy, it would have been simple to state it" and noted that imposing a "prior actual residence" requirement would allow an applicant to obtain the home exemption if he lived for only one day in the home before entering a nursing facility but not if he was unable to move in before needing care.  Thus, Judge Yelenosky concluded, the Commission's interpretation is incorrect and the purposes of Medicaid are better served by allowing an applicant to claim the home exemption for a home he buys while in a nursing facility, as long as he intends to move into that home upon discharge.[7]

Further, commentators have noted that prior to 2008 changes to the MEPD Handbook, "it was common for a Medicaid applicant to inherit a home or even buy one and for it to be exempt, based on the individual's intent to live there if and when able to leave the nursing home."  Molly Dear Abshire, H. Clyde Farrell, Patricia Flores Sitchler & Wesley E. Wright, 51

---

[7] District Judge Lora Livingston ruled similarly in *Bettes v. Texas Health & Human Services Commission*, D-1-GN-08-002967 (July 2, 2010), another ruling that the Commission opted not to appeal but has refused to apply.  In that case, Bettes developed dementia while in a nursing facility, requiring her son to act for her.  Her son bought a home for her and even arranged for Bettes to leave the nursing facility and live in the home for three days, but the Commission refused to exempt Bettes's home.  Judge Livingston ruled that the Commission's refusal to exempt the home was "based on an erroneous interpretation of the applicable statutes and regulations."

Tex. Prac., Texas Elder Law § 8:96, Excluded resources—Home, Author's Comment (2021 ed.); *see* H. Clyde Farrell & Bills Burdett Pak, *Planning for Beneficiaries Who May Need Long-Term Care*, at 9 & n.30 (Nov. 15, 2016, www.epcct.org/assets/Councils/CentralTexas-TX/library/ Planning%20for%20Beneficiaries%20Who%20May%20Need%20Long-Term%20Care.pdf, last visited Apr. 3, 2022). The authors of the Texas Practice Series on Texas Elder Law explain that the Commission's January 1, 2008 changes "added the requirement of having an ownership interest while residing there, thus putting at risk even childhood homesteads inherited by nursing home residents," and characterize that change as "a substantive manual change without rulemaking, possibly subject to challenge by judicial review," noting Judge Yelenosky's ruling in *Seffer*, which the Commission opted not to appeal but since has refused to apply. 51 Tex. Prac., Texas Elder Law § 8:96, Author's Comment & n.5.

The Commission cites *Groce v. Director, Arkansas Department of Human Services*, in which the state court of appeals held that federal and state regulations require "a house to be an individual's principal place of residence before allowing it to be excluded as a homestead exemption." 117 S.W.3d 618, 622 (Ark. Ct. App. 2003). In that case, the applicant, while living in a care facility, bought a life estate in her daughter's home and periodically stayed there for "short periods of time as a guest." *Id*. at 620. When she sought to exclude the life estate from her resources for Medicaid calculations, the Arkansas Department of Human Services denied her request, *id*., and the court of appeals agreed, holding that "[t]he fact that appellant signed an 'intent to return' form does not negate this requirement—the house was never her principal place of residence to which she could 'return,'" *id*. at 622. We agree with the Commission that *Groce* presents similar facts to this case. However, we are unpersuaded by the *Groce* court's holding. *See SpawGlass Constr. Corp. v. City of Houston*, 974 S.W.2d 876, 881

10

(Tex. App.—Houston [14th Dist.] 1998, pet. denied) ("Decisions from other states are not binding on this court, and their value as a precedent is persuasive only." (citing *Williams v. Cimarron Ins. Co.*, 406 S.W.2d 173, 175 (Tex. 1966))).

Under the Commission's argument, an applicant can exempt his home if he lives there for one day before entering a nursing facility, but an applicant living in an apartment and in the process of buying a home who, the day before closing, suffers a fall requiring nursing care cannot. Such a distinction is not supported by the language found in the various federal statutes and rules, makes no practical sense, and in no way advances the purposes behind the assistance programs in question.[8] The Burts bought a half-interest in their daughter's home—the same home in which they lived for decades before selling it to the Wallaces—and informed the Commission that they viewed it as their principal place of residence, stating an intention to move there if they were released from the nursing facility. Under the language provided by Congress and the purposes of the various assistance programs that inform our application of the language, we agree with the trial court that the Commission's requirement that an applicant must establish "prior occupancy" of a home is incorrect. We overrule the Commission's issue on appeal.

**CONCLUSION**

Having overruled the Commission's issue on appeal, we affirm the trial court's judgment.

---

[8] In his *Seffer* letter, Judge Yelenosky refused to glean from the language chosen by Congress an intent "to require a first-time home purchaser to live in the house for a day before going to a nursing home or to interrupt a stay at a nursing home to fulfill a one-day prior occupancy requirement before applying for Medicaid." *Estate of Seffer v. Texas Health & Hum. Servs. Comm'n*, No. D-1-GN-08-000790, 419th District Court of Travis County, Texas (Dec. 16, 2008 letter ruling).

11

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: April 21, 2022