Before BULLOCK, COHEN and BASS, JJ.

## OPINION

BASS, Justice.

This is an appeal from a suit contesting the eligibility of Betty Brock Bell as a candidate for Justice of the Peace.

Appellant and Betty Brock Bell were candidates for the Democratic nomination as Justice of the Peace, Precinct 7, Position 1, in the primary election held May 7, 1984. It is undisputed that Betty Brock Bell received a majority of the votes cast in the primary election. Appellant contends that she was ineligible to be the Democratic candidate because she had not been a resident of Precinct 7 for at least six months prior to the last date for filing an application to have her name on the primary ballot, February 6, 1984. Tex.Elec.Code Ann. art. 1.05 subdiv. 1. (Vernon Supp.1984).

Appellant brought this suit to enjoin Bell from running in the November 6, 1984, general election as the Democratic candidate for Justice of the Peace Precinct 7, Position 1, and to enjoin the Harris County Democratic Executive Committee (the Committee) from certifying her as the Democratic candidate in the general election.

At trial appellant presented evidence that Bell owned a home in Precinct 6 in which she, her husband and their son had lived for many years. Appellant proved that several neighbors made pre-trial statements that Bell lived in her Precinct 6 home during the six month period before the filing deadline. There was testimony that Bell's adult son stayed at the home after July 4th, and that all of the utilities remained connected during the six month period. The newspaper and the mail con-

Cecil Paul BUSH, Appellant,

v.

Betty Brock BELL and Harris County Democratic Executive Committee, Appellees.

No. 01-84-00495-CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 1, 1984.

tinued to be delivered there. Appellant showed that Bell visited the local pharmacy and her own doctor during that period and never informed them of a change of address. She never informed the constable for whom she worked of her new address. Bell never informed any of her creditors of her new address. Bell had also filed a sworn document with the United States Equal Employment Opportunity Commission [E.E.O.C.], on October 4, 1983, listing the Precinct 6 address as her residence. She complained to a local lawyer that the lawyer's associate, who also lived in that neighborhood, was detracting from the appearance of her neighborhood by failing to mow his lawn. Bell's husband continued to carpool from that address. He never told his employer that he had moved. His name continued to be listed in the city directory as an officer of the local civic club. Bell and her husband admitted that they had not taken all of their clothing, and only removed two chairs and a portable television when they moved from Precinct 6 into Precinct 7.

On the other hand, Bell testified that she moved with her husband into her mother's home within Precinct 7 on July 4, 1983 with the intention to abandon her previous residence located within Precinct 6 and to establish her residence with her mother. Her husband made the same statement. They both admitted that they agreed to change their residence because Bell was going to run for office. Clearly, July 4, 1983 was more than six months prior to February 6, 1984, the deadline for filing for candidacy. There was testimony by several people regarding her actual residence at her mother's home, as well as regarding her verbal declarations that she intended to establish that home as her residence. A real estate broker testified that the Bells had listed their Precinct 6 home for sale on July 9, 1984; however, no prospective buyers actually inspected the home. The Bells' adult son lived in that home for a period while it was listed. Mr. Bell testified that he had resigned from his position with the local civic club because of their move. Bell explained that the utilities remained connected after they had moved out so that the house would not appear abandoned. They also explained that it had been unnecessary to notify others of an address change because all important mail was received at their post office address. While there was contrary evidence which did raise an issue of fact as to Bell's actual residence, the trial court found that Bell was a resident of Precinct 7 for six months prior to the February 6, 1984 filing deadline and denied appellant's application for permanent injunctions.

In three points of error, appellant contends that the trial court incorrectly held that Bell was a qualified candidate because the proof showed that she did not meet the residency requirement.

■ We find that the fact that her motivation for establishing a new residence was her desire to be a candidate for public office is not relevant to the issue in this cause. *Garza v. Trevino*, 541 S.W.2d 524 (Tex.Civ.App.—San Antonio 1976, no writ).

The relevant portions of Tex.Elec.Code Ann. art. 1.05 are as follows:

No person shall be eligible to be a candidate for ... any public elective office ... unless he shall have resided ... for six months next proceeding such date in the ... precinct ... for which the office is to be filled;

(1) For a candidate whose name is printed on the ballot for a general (first) primary election, the applicable date is the last day on which any candidate for the office involved could file his application to have his name printed on the ballot for that primary election.

Tex.Elec.Code Art. 5.08 states that for purposes of the statute:

(a) ... "residence" means place of habitation to which he intends to return after any temporary absence.... to another place for temporary purposes only....

(d) A person shall not be considered to have gained a residence in any place to which he has come for temporary purposes only, without the intention of making such place his home....

(g) The residence of a married woman not permanently separated from her husband is considered to be the place where her husband has his residence, but a married woman not living in a household with her husband may establish a separate voting residence from that of her husband.

The district court's decision tracks the language of the statute and manifests a proper application of the law. The court specifically found that Betty Brock Bell:

abandoned the premises located at 6002 Pebble Lane and lived continuously and exclusively at 5030 Cosby, which is within Precinct 7 of Harris County, Texas, from July 4, 1983 until [the date of trial, a period of more than one year]

The court then concluded that Bell satisfied the residency requirement of Tex.Elec. Code Ann. art. 1.05.

■ Appellant contends that it was error for the trial court to find that Bell met the residency requirement for candidacy when she admitted her ineligibility in a sworn statement in a public record, the E.E.O.C. complaint form. In support of this contention, appellant cites *Garcia v. Carpenter*, 525 S.W.2d 160 (Tex.1975), and *McClelland v. Sharp*, 430 S.W.2d 518 (Tex.Civ.App.—Houston [14th Dist.] 1968; no writ.). Both cases are original mandamus proceedings in which the relators sought to compel election officials to place their names on the ballot. Neither case considered the point here at issue, namely, whether the factual ruling of the district judge, made after a contested hearing on the merits, was supported by sufficient evidence.

Appellant next contends that the trial court's finding that Betty Brock Bell met the residence requirement for candidacy was against the overwhelming weight of the evidence presented at trial.

The standard which we must apply in this appeal from the denial of a permanent injunction is the same as in all civil cases in which the appellant raises a point of error asserting that the findings were so against the overwhelming weight and degree of the evidence as to be manifestly wrong and unjust. *Harrison v. Chesshir*, 159 Tex. 359, 320 S.W.2d 814 (1959). As required, we have considered and weighed all of the evidence in the case and do not conclude that the judgment was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Appellant's three points of error are overruled.

The judgment of the trial court is affirmed. In view of the fact that ballots for the general election have already been printed and absentee ballots have been issued, no motion for rehearing will be entertained.