### In re Preston GRAHAM.

### No. 03–07–00705–CV.

Court of Appeals of Texas, Austin.

March 28, 2008.

Rehearing Overruled April 18, 2008.

Steve McConnico and Jane M. N. Webre, Scott, Douglass & McConnico, L.L.P., Austin, TX for Relator.

George S. Finley, Smith, Rose, Finley, Harp & Price, PC, San Angelo, William Wilson Johnston, Waco, TX, for Real Party In Interest.

Before Justices PATTERSON, PURYEAR and HENSON.

## *OPINION*

DIANE HENSON, Justice.

Relator Preston Graham petitions for a writ of mandamus directing the county court at law to transfer a probate proceeding from Tom Green County to Travis County. Because we hold that venue of

the underlying proceeding is mandatory in Travis County, we conditionally grant Preston's petition.[1]

■ A trial court's denial of a motion to transfer venue pursuant to a mandatory venue provision is reviewable by mandamus. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 15.016, 15.0642 (West 2002). A mandamus involving mandatory venue is reviewed using an abuse-of-discretion standard. *In re Missouri Pac. R.R. Co.*, 998 S.W.2d 212, 215 (Tex.1999). Because it is presumed that there is no adequate remedy for a failure to enforce a mandatory venue statute, the relator is not required to show a lack of adequate remedy on appeal. *Id.*

The probate code provides mandatory venue for the probate of wills and administration of estates. Tex. Prob.Code Ann. § 6 (West 2003). Mandatory venue lies in the county where the deceased resided, if the deceased had a domicile or fixed place of residence in Texas. *Id.* § 6(a). If the deceased died in Texas but had no domicile or fixed place of residence in the State, venue is proper either in the county where the deceased's principal property was located at the time of her death, or in the county where she died. *Id.* § 6(b).

The deceased in this case, Dianne Hanks Graham, died on January 16, 2006, in Travis County. Her will was filed for probate in Tom Green County by her mother, Freda Nutt Hanks. When the will was filed for probate, Preston and Hanks each exe-cuted an affidavit stating, "Decedent was domiciled and her principal property was located in this county at the date of death." The will was admitted to probate by the constitutional county court in Tom Green County on February 8, 2006.

On March 15, 2006, Hanks disclaimed her interest in Dianne's estate, with the result being that the estate would go to Dianne's two sons, Preston and Barclay Graham. Barclay Graham died on October 19, 2006. On April 19, 2007, Hanks filed suit against Preston in Tom Green County, seeking a declaratory judgment that her disclaimer was invalid. The constitutional county court subsequently transferred the contested issue regarding Hanks's disclaimer to County Court at Law No. 2 of Tom Green County.

Preston moved to transfer venue of all probate proceedings from Tom Green County to Travis County, asserting that Dianne was domiciled in Travis County at the time of her death. After a hearing, the county court at law denied Preston's motion to transfer venue on November 26, 2007.[2] Preston now seeks mandamus relief to compel the transfer of the entire probate proceeding to Travis County.

■ Section 6 of the probate code is titled, "Venue for probate of wills and administration of estates of decedents." Hanks argues that Preston cannot move to transfer venue under section 6 because the suit regarding her disclaimer is a "matter incident to an estate,"[3] rather than a pro-

---

1. Because the relator, Preston Graham, and the deceased in the underlying probate case, Dianne Hanks Graham, share the same surname, we will refer to these parties by their first names to avoid confusion.

2. Because only the contested matters of the probate proceeding were transferred to the county court at law, Preston also filed a motion in the constitutional county court, requesting that the contested venue issue be transferred to the county court at law for resolution and requesting transfer of the entire probate proceeding to Travis County. The constitutional county court transferred the contested venue issue to the county court at law on August 28, 2007.

3. The probate code provides that courts exercising probate jurisdiction shall have the power to hear "all matters incident to an estate." *See* Tex. Prob.Code Ann. § 5(f) (West Supp. 2007).

bate proceeding, and therefore section 6 does not apply. However, Preston's motion to transfer venue was not limited to the contested matter of Hanks's disclaimer, but requested transfer of "all proceedings connected with Cause Number 06P045, Estate of Dianna Hanks Graham." As a result, the mandatory venue provisions of chapter 6 are applicable to this proceeding.[4]

■ Hanks further argues that Preston cannot now challenge venue because venue was determined by the constitutional county court's order admitting the will to probate, and that order is a final decree that is not subject to collateral attack. *See id.* § 8(e) (stating that a court in which there has been filed an application for a probate proceeding has full jurisdiction to determine venue of the probate proceeding and any related proceeding, and its determination shall not be subject to collateral attack). However, because Preston's motion to transfer venue seeks transfer of the entire probate proceeding as discussed above, it is not a collateral attack, but a direct challenge to the venue determination in the order admitting the will to probate.

■ Hanks further attacks Preston's motion on a third and final procedural ground. The probate code provides for transfer of proceedings for want of venue "[i]f it appears to the court at any time before the final decree that the proceeding was commenced in a court which did not have priority of venue." *Id.* § 8(c)(1). Hanks contends that the order admitting the will to probate was a "final decree" for purposes of section 8(c)(1), and therefore the proceeding may not be transferred for want of venue.

■ "Final decree" is not defined in the probate code. At least one court has upheld a venue challenge under section 8(c)(1) that was brought after the trial court entered an order admitting the will to probate. *In re Estate of Izer*, 693 S.W.2d 481, 482, 484 (Tex.App.-Corpus Christi 1985, writ ref'd n.r.e.). Like the party challenging venue in *Izer*, Preston sought a venue transfer of the probate proceeding after the will had been admitted to probate. An independent administration—the probate method employed for Dianne's estate—is not considered closed until all property has been distributed and debts have been paid as fully as the assets allowed. *See Texas Commerce Bank–Rio Grande Valley, N.A. v. Correa*, 28 S.W.3d 723, 728 (Tex.App.-Corpus Christi 2000, pet. denied). Because Hanks has not provided, nor have we found, any substantial authority for the proposition that an order admitting a will to probate is a "final decree" for purposes of section 8(c)(1), we hold that section 8(c)(1) does not preclude Preston's motion to transfer venue.

Preston contends that Dianne was domiciled in Travis County at the time of her death. Hanks asserts that venue is proper in Tom Green County because Dianne was domiciled there at the time of her death, or alternatively, because Dianne had no fixed place of residence in Texas at the time of her death, and her principal property was located in Tom Green County. *See* Tex. Prob.Code Ann. § 6(a), (b) (West 2003).

Before reviewing the evidence regarding domicile, we must first address whether Preston has waived his venue challenge. He initially executed an affidavit titled "Proof of Death and Other Facts," when the will was filed for probate in Tom Green County, stating, "Decedent was domiciled

---

4. Because it is not necessary to our holding in this case, we express no opinion regarding the applicability of the mandatory venue provisions of section 6 to matters incident to an estate.

and her principal property was located in this county at the date of death." Preston later filed an affidavit stating that his assertion of domicile in Tom Green County had been a mistake and was incorrect. Preston further stated that he was unsure whether he actually read the Proof of Death before he signed it, that he did not review it carefully due to his state of shock over his mother's death, and that he only signed it at Hanks's request.

▮▮▮▮ At the time Preston signed the Proof of Death, he was not a party to the probate proceeding. A judicial admission results when a *party* makes a statement of fact which disproves his right of recovery or defense. *H.E. Butt Grocery Co. v. Pais,* 955 S.W.2d 384, 389 (Tex.App.-San Antonio 1997, no pet.). Because Preston was not a party at the time his statement was made, it cannot be used against him in this proceeding as a judicial admission. *See Richards v. Commission for Lawyer Discipline,* 35 S.W.3d 243, 247 (Tex.App.-Houston [14th Dist.] 2000, no pet.). For the same reason, Preston's statement cannot be used against him as a "quasi-admission," which is a *party's* testimonial declaration that is contrary to his position. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex. 1980).

▮▮▮▮ The doctrine of judicial estoppel is also inapplicable to Preston's statements, as judicial estoppel applies only to contradictory positions taken in a subsequent proceeding. *Galley v. Apollo Associated Servs.,* 177 S.W.3d 523, 529 (Tex. App.-Houston [1st Dist.] 2005, no pet.). Because Preston's initial statement was made in the same probate proceeding that he now moves to transfer, he is not judicially estopped from making a contradictory statement.

▮▮▮▮ As an equitable matter, it must be noted that Preston's initial statement was a legal conclusion that he was not qualified to make. *See Duffy v. Cole Petroleum Co.,* 117 Tex. 387, 5 S.W.2d 495, 496 (1928) (noting that affidavit reciting domicile of parties for venue purposes "merely stated a legal conclusion"). Preston, a lay person, could not be expected to know the legal definition of "domicile" when he stated, "Decedent was domiciled and her principal property was located in this county at the date of death," nor could he be expected to know the legal ramifications of such a statement. Furthermore, Preston was not represented by independent counsel when he signed the Proof of Death, as he was not a party to the probate proceeding at that time. This Court has previously refused "to rely on a lay person's testimony on the legal characterization of property to hold she waived argument as to other legal theories." *Nesmith v. Berger,* 64 S.W.3d 110, 118 n. 6 (Tex.App.-Austin 2001, pet. denied). Similarly, we will not rely on Preston's initial statement regarding domicile—a statement made without counsel and at the urging of Hanks who has since brought suit against him—to hold that he waived his argument as to domicile in Travis County. Because Preston's argument has not been waived, we must now look to the evidence regarding domicile.

The evidence before the trial court showed that Dianne maintained a mailing address at her family's office building in San Angelo, located in Tom Green County, which she used for her bank accounts, driver's license, bills, and general business correspondence. Dianne also used the family office building address to register to vote in Tom Green County, although she never actually voted there. While Dianne's income tax returns reflect a Tom Green County address, the address listed is a post office box in San Angelo, rather than a residential location. Furthermore, the income tax returns that can be found in the record, from tax years 2000–2003,

indicate that they were prepared by an Austin-based accountant.

Rita Whitt, the Hanks family secretary, testified that the office in Tom Green County was a commercial property used by several members of the family, including Dianne, to transact business and handle correspondence. Whitt further testified that in the five years she had been employed by the family, she never saw anyone sleep overnight at the office building in Tom Green County. Dianne did not own residential housing in Tom Green County at the time of her death.

The record reflects that in 1999, Dianne sold a condominium located in Austin, which she had declared as her residential homestead, and signed a lease at the Mesa Verde apartments, also located in Austin. She also rented three garages at the Mesa Verde apartments for storage purposes. In both the condominium and the Mesa Verde apartment, Dianne used the master bedroom as an office rather than as a sleeping area, in order to deduct the rent and utilities from her taxes as a business expense. In the Mesa Verde apartment, Dianne used a breakfast nook as a sleeping area. She continued to renew the lease on her Mesa Verde apartment until the time of her death, frequently writing letters to Mesa Verde management about how much she enjoyed the premises. She secured homeowners insurance for her possessions at the apartment and stored personal possessions there, including kitchen utensils and cleaning supplies. Affidavits from friends and neighbors reflect that Dianne frequently entertained guests for meals at the apartment and took a great deal of pride in the extensive garden that she had cultivated on the grounds.

In addition to the mailing address at the office in Tom Green County, Dianne also maintained two post office boxes in Austin. While in Austin, Dianne attended counseling services, participated in a six-month course to become certified as a registered massage therapist, and obtained a concealed handgun license. According to Whitt, Dianne only returned to Tom Green County once a year for family business meetings and once for her father's funeral in the five years before her death.

Hanks testified by affidavit that Dianne frequently stayed in hotels, occasionally lived in a Winnebago, and that the family office building in Tom Green County was equipped to hook up an RV. Dianne did own a Winnebago at one time, deducting the mortgage interest on her income tax return as home mortgage interest. However, Whitt testified that Dianne sold her Winnebago in September 2002, and there is no evidence that she ever purchased another one. Hanks and Whitt also testified that Dianne had been working to remodel a ranch house in Pecos County, but the work was not completed at the time of her death.

Duke Wilson, Reute Butler, and Steven Shepherd, personal friends of Dianne, each testified by affidavit that Dianne had expressed to them that she enjoyed living in Austin and would never live in San Angelo again.

 The two essential elements of a determination of domicile are "residence in fact" and intent "to make the place of residence one's home." *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 830, 83 L.Ed. 817 (1939). When a decedent makes statements regarding residence—such as voter registration—that are inconsistent with the facts showing actual residence, such statements "are of slight weight" and cannot establish residence in fact. *Id.* at 425, 59 S.Ct. 830. Instead, the controlling factor is "the actual fact as to the place of residence and decedent's real attitude and intention with respect to it as disclosed by his entire course of conduct." *Id.*

 In *Texas v. Florida*, a decedent's frequent statements that he was a Texan,

including his act of registering to vote in Texas, were insufficient to overcome the evidence showing that his residence in fact was actually Massachusetts—the place where he kept his furnishings and centered his personal activities. *Id.* at 425–26, 59 S.Ct. 830. Similarly, Dianne's use of a Tom Green County mailing address for her driver's license and other business correspondence, as well as her voter registration in Tom Green County, merely amount to conclusory statements that conflict with the facts of her actual residence. While the dissent emphasizes the fact that Dianne's will listed Tom Green County as her domicile, the will—in addition to being a conclusory statement similar to her voter registration and other business correspondence—was executed in 1993, thirteen years before Dianne's death.

The evidence that Dianne slept, gardened, entertained guests, stored her personal possessions, and generally conducted day-to-day activities in Travis County conclusively establishes residence in fact and intent to make the residence her home. Furthermore, there is *no evidence* to support a finding that Dianne was domiciled in Tom Green County.

In light of the evidence showing that Dianne's fixed place of residence was in Travis County, we disagree with Hanks's alternative argument that venue is proper in Tom Green County, where Dianne's principal property is located, because she had no fixed place of residence in Texas. *See* Tex. Prob.Code Ann. § 6(b) (West 2003). The record reflects that Dianne sold her Winnebago in 2002 and

had not purchased another one. Furthermore, while Dianne may have been remodeling a home in Pecos County in order to reside there in the future, an established domicile—in this case, Travis County—is not lost unless she leaves that residence with an intent not to return. *See Commercial Standard Ins. Co. v. Nunn,* 464 S.W.2d 415, 417 (Tex.App.-Texarkana 1971, writ dism'd).

Because there is no evidence establishing Tom Green County as Dianne's domicile at the time of her death and the evidence conclusively establishes Travis County as Dianne's domicile at the time of her death, we find that the trial court's action in denying the motion to transfer pursuant to the mandatory venue provision constitutes an abuse of discretion.

For the foregoing reasons, we conditionally grant Preston's petition for writ of mandamus directing the county court at law to transfer this case to Travis County. The writ will only issue if the trial court fails to act in accordance with this opinion.

Dissenting Opinion Justice
PATTERSON.

JAN P. PATTERSON, Justice, dissenting.

In this original proceeding, the majority concludes that the trial court's denial of relator Preston Graham's motion to transfer venue from Tom Green County to Travis County was an abuse of its discretion. The trial court declined to grant relator's motion made 1½ years after the will had been admitted to probate and only after litigation had erupted.[1] Because the ma-

---

1. Decedent Dianne Hanks Graham's will was admitted to probate in February 2006; relator initially filed a motion to transfer venue in May 2007; and the hearing on the venue motion was held in November 2007. At the hearing, the trial court expressed concern with relator's venue motion:

You said twice in your argument that everybody was fine when you filed—when the case was filed in Tom Green County. Everybody got along; everybody was in agreement when it was filed in Tom Green County. The decision to change the venue only came up when people became out of agreement, and that's concerning to me, that it

jority improperly substitutes its judgment for that of the trial court in contravention of well-established standards of review, I respectfully dissent.

"In mandatory venue mandamus actions, we look only to whether the trial court clearly abused its discretion in ruling upon the motion." *In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 117 (Tex.2006); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). "A trial court clearly abuses its discretion if 'it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.'" *Walker*, 827 S.W.2d at 839 (citation omitted). To be entitled to mandamus relief, a "relator must establish that the trial court could reasonably have reached only one decision." *Id.* at 840.

An appellate court may not substitute its own judgment for that of the trial court for matters committed to the trial court's discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002); *Walker v. Packer*, 827 S.W.2d at 840. "The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Id.* at 242.

The majority concludes that Travis County, and not Tom Green County, was decedent Dianne Hanks Graham's domicile at the time of her death, and that, under the mandatory venue provisions of the Texas Probate Code, the trial court was required to transfer the case to Travis County. *See* Tex. Prob.Code Ann. § 6(a) (West 2003).[2] The elements of domicile are actual residence "coupled with the purpose to make the place of residence one's *permanent* home." *Maddox v. Surber*, 677 S.W.2d 226, 228 (Tex.App.-Houston [1st Dist.] 1984, no writ) (emphasis added); *see also Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136, 139 (1951) ("The elements of the legal concept of domicile are: 1. An actual residence—2. The intent to make it the permanent home. The word *home* seems to mean a 'true, fixed and permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.' ") (citation omitted); *In re Estate of Steed*, 152 S.W.3d 797, 803–04 (Tex.App.-Texarkana 2004, pet. denied) ("A person may establish only one domicile, whereas he may have several residences."). The period of time that a decedent resides in a county is irrelevant to the domicile determination "so long as the act and the intention to acquire a domicile coexist." *Maddox*, 677 S.W.2d at 228–29.

---

was okay and everybody agreed that venue was here as long as everyone got along. But the minute that there was some issue between parties or beneficiaries, well, then suddenly it became appropriate at that point to change venue.

At the time of her ruling, the trial court recognized that the parties had presented conflicting evidence: "[E]ach side had a lot of information they presented in support of either argument."

2. The probate code provides that if a decedent does not have a domicile or fixed place of residence in this state, venue is proper in the county in which the decedent died or in the county where his principal property was at the time of death. *See* Tex. Prob.Code Ann. § 6(b) (West 2003). It was undisputed that decedent's principal property was in Tom Green County, supporting the trial court's denial of the motion to transfer venue if decedent did not have a domicile or fixed place of residence at the time of her death.

At the time of her death, there was evidence that decedent had a residence in Travis County—she was renting an apartment in Austin. The issue then becomes whether she had a coexisting intention to make Austin her permanent home, as distinguished from a temporary residence. *See id.; see also Steed,* 152 S.W.3d at 803 ("[L]anguage in the statute referring to 'fixed place of residence' following the word 'domicile' ... signif[ies] a permanent residence, as distinguished from one which is only temporary.").

As to decedent's intentions, although there was contrary evidence, there was evidence that she never intended Travis County to be her permanent home. Decedent consistently declared in official documents, including her will, voter registration certificates, and income tax returns that her residential address was in Tom Green County, including during the time period that she was renting an apartment in Austin.[3] There was testimony that she referred to and used her Austin apartment as an "office,"[4] and that she was in "transition"—that she was in Travis County on a temporary basis for health purposes and while she remodeled her "ranch house" in Pecos County.[5] Her ranch house remodel included accommodations "to receive a motor home,"[6] and she also had "a wall of the

---

**3.** The documentary evidence before the trial court included decedent's will that was executed in 1993, her income tax returns for the years 2000 through 2003, and her voter registration certificates from 1996 and 2005. The physical address that she consistently used was the address of her family's office building in San Angelo.

**4.** Decedent's office manager and secretary Rita Whitt averred by affidavit that decedent treated the apartment in Austin as an office for income tax purposes—"100% of the total Austin office apartment rent and office utilities/supplies were deducted on [decedent's] income tax returns [for 2001 to 2003] as a business expense," that decedent treated her motor home as her home for income tax purposes until she sold it in 2002, that decedent did not reinvest in a homestead after she sold her motor home, and that in Whitt's presence, decedent "always referred to her Austin apartment as an *office,* not as a home." The decedent's mother Freda Nutt Hanks averred by affidavit that in decedent's "small, efficiency Austin office," she maintained "duplicate files of what she had in her San Angelo office. The one bedroom in the efficiency apartment *was made into her office,* and the bed she used when she needed it was actually in a little breakfast nook."

**5.** Freda Nutt Hanks averred by affidavit that her daughter did not have a residence at the time of her death and that she did not believe that her daughter "ever called Austin her home":

[Decedent] stayed in various places, and rented apartments in several states over the years, but they were never her home. For a number of years she had a Winnebago which she could drive and live in, and before that she had another similar travel home. She often referred to these travel homes as her home. I believe that she sold the Winnebago in about 2004, because she was having so much trouble and pain in her back, that she could not manage it. She had four back surgeries, and in the last years of her life sought medical help at numerous places trying to find help for the pain that she endured.... If San Angelo was not her domicile, then I would say she was living in transition between homes principally due to major physical and emotional pain. She needed to stay in hotels or motels as much as possible for the convenience of room service.

Decedent's first cousin Warren Nutt averred by affidavit that decedent "loved to live with freedom" and that her favorite place to be was the ranch house. Another cousin Nancy Jo Nutt averred by affidavit that Decedent taught her all of decedent's "systems in her office apartment in Austin" so that Nutt would be able to help decedent with her business and decedent "would be free to travel in a new RV home and be at her Pecos county ranch house." Nancy Jo Nutt also averred that decedent would "live in hotels and use room service."

**6.** Freda Nutt Hanks also averred that during the three years before her daughter's death that decedent "spent much time and effort" remodeling the ranch house, that she was often at the ranch "supervising the remodel-

office building [in San Angelo] remodeled so that she could drive her motor home into it like a garage, hook up all utilities, and other conveniences, and use it as her home."[7] This evidence is some evidence that, although decedent had an apartment in Austin, she did not have a coexisting intent to make Austin her permanent home and domicile. *See Maddox*, 677 S.W.2d at 228.

Based on this evidence, the trial court could have concluded that decedent did not have a domicile or fixed place of residence in the state under section 6(a) of the probate code and that venue was proper in Tom Green County under section 6(b) as the county where decedent's principal property was located. *See* Tex. Prob.Code Ann. § 6(a), (b). Tempting as it may be to reweigh the evidence, we may not if we are to serve our standards of review, recognizing the role of the trial court. Because I would conclude that the trial court did not clearly abuse its discretion in its venue ruling, I would deny relator's petition for a writ of mandamus.

ing," and that the remodeling was completed just days before decedent's death. Rita Whitt also averred that decedent had remodeled the Pecos County ranch house to receive a motor home.

7. Rita Whitt averred that the San Angelo office was designed so that decedent could "park a motor home inside her office's warehouse by means of a large, motorized metal door. She could comfortably and securely live at that location."