**Opinion issued March 1, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00783-CV

———————————

**THE STATE OF TEXAS, Appellant**

**V.**

**DAVID B. WILSON, Appellee**

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-75695**

## O P I N I O N

In this quo warranto proceeding, the State sought to establish that appellee David B. Wilson did not meet the statutory residency requirement when he ran for the trustee position of Houston Community College System ("HCC") District 2.

After a trial, the jury found that Wilson was a resident of HCC District 2 as of the date of the election, November 5, 2013. The trial court denied the State's motion for judgment notwithstanding the verdict and entered a take-nothing judgment against the State. In three issues the State argues that (1) the trial court abused its discretion by failing to accurately state in the jury charge the requirements for establishing residency under the Texas Election Code; (2) legally and factually insufficient evidence supported the jury's finding that Wilson was a resident of District 2; and (3) public policy demands that Wilson not remain on the HCC Board of Trustees ("the Board").

We affirm.

## Background

On August 26, 2013, Wilson, who has long been active in City of Houston politics, filed an application to be placed on the November 2013 ballot for the trustee position of HCC District 2. On the application, Wilson swore that his "permanent residence address" was 5600 West 34th Street ("West 34th Street"), a location that is undisputedly within HCC District 2. Wilson won the election for HCC District 2 Trustee.

One month after the election, the State, by and through the Harris County Attorney's Office, filed an original quo warranto petition, alleging that Wilson was ineligible to hold the office of HCC District 2 Trustee. The State alleged that it

2

"will show that David B. Wilson was not at the time of the election in November 2013, a resident of HCC District II and is therefore ineligible to serve in that office." The State sought either to prevent Wilson from holding office or to remove him from office.

At trial, the State called Wilson as its first witness. Wilson testified that he moved to West 34th Street around the beginning of 2012. He agreed with the State that he was not the record owner of West 34th Street; instead, DSW Equipment, Inc., a corporation owned by Wilson's sister, owns the property and his sister allows him to live there without a written lease and without paying rent.[1] The parties agreed that West 34th Street is a commercial property with a warehouse, but Wilson testified that the second floor of the building is an apartment and that is where he lives. Wilson testified that he also uses West 34th Street to operate a non-profit school called Texas Electrical Safety Association which provides continuing education courses for electricians.

Wilson agreed with the State that the City of Houston inspected and "red-tagged" the property in January 2014, after the election and after the State instituted this proceeding, declaring that it was "not permitted for an occupancy as

---

[1]     Wilson testified that he "recently" had begun paying rent at the West 34th Street property. He stated that his CPA advised him to pay rent to DSW Equipment for "tax reasons," but he did not know what those reasons were. He disagreed with the State when the State's attorney suggested that the reason was so he would be able to tell the jury that West 34th Street was his legitimate residence.

3

a residence." Wilson testified that he applied to obtain an occupancy permit, but the City sent him a "deficiency report" of problems at the property he needed to fix before it would issue him an occupancy permit. He stated that he has not obtained an occupancy permit for the property. During the City's inspection of the property, the inspector took pictures of the second-floor apartment, which depicted a bedroom, bathroom, kitchen, living room, and office. The apartment contained some furniture and personal belongings. Wilson agreed that the bathroom in the apartment lacked a shower and that the office had a desk but no computer. Wilson testified that he used the shower and the computer located on the first floor of the building. He also testified that he does not cook in the apartment's kitchen. He characterized the apartment as a place for him to sleep.

Wilson also testified that around 1999 or 2000, he purchased a house for his wife located on Lake Lane ("the Lake Lane house"), which is undisputedly not within HCC District 2. Wilson's wife is the record title holder of that property. Wilson acknowledged that, in 2006, he filed suit against the Harris County Flood Control District, arguing that it had damaged the Lake Lane house. Wilson agreed that he was the only plaintiff in that case and that his petition identified him as the "assignee/owner" of the property. Wilson testified that his wife lives at the Lake Lane house, that his children lived there before they left home for college, that family activities such as birthday parties, holiday dinners, and his son's wedding

4

occurred at the Lake Lane house, and that he spends his weekends at the Lake Lane house.

The trial court admitted property tax receipts for the 2008–2012 tax years for the Lake Lane house. For three of those years, Wilson paid the property taxes with a check drawn on an account owned by D.S.W. Equipment. For the remaining two years, Wilson signed checks drawn on a joint account that he owned with his wife. The trial court also admitted a document from the Harris County Appraisal District entitled "Real Property Account Information" for the Lake Lane house. This document listed Wilson's wife as the owner of the Lake Lane house and indicated that a residential homestead exemption had been claimed for the property. The trial court also admitted an exhibit containing pages from Wilson's federal income tax returns for the 2008–2012 tax years. The tax returns listed both Wilson and his wife, listed their "home address" as the Lake Lane house, and indicated that Wilson and his wife filed their tax returns jointly. Wilson testified that his tax returns list the Lake Lane house as his address because "[his] wife's residence is more stable than [his]" and he "move[s] every two or three years and change[s his] residence."

When asked by his counsel why he considers West 34th Street to be his residence, Wilson testified:

> I want it to be my residence. I live there. I spend the majority of my
> time there. I want to live in the city of Houston. The politics in the

city of Houston affects my life and my business; so I choose to live there so I can be active in the Houston politics.

He testified that his wife has resided at the Lake Lane house for at least the past ten years, but when he asked her to move inside Houston city limits, she did not want to move from the Lake Lane house. Wilson did not wish to divorce his wife to make it easier for him to establish a residency within the City of Houston.

Wilson testified that he is registered to vote at West 34th Street, and the trial court admitted a copy of his application to change his voter registration to this address, filed in April 2013. He stated that his driver's license lists West 34th Street as his address, and he receives mail there, including bank statements, utility bills, credit card statements, prescription drug shipments, magazines, and political mail. The trial court admitted numerous pieces of mail addressed either to Wilson or to a company for which he worked, Southwest Signs, at West 34th Street, dated from September 2013 to April 2014. Wilson testified that the fact that the building on the West 34th Street property had an apartment was one of the considerations when DSW Equipment looked to purchase a piece of property.

Wilson stated that he spends five nights per week at West 34th Street, he spends "basically all day there" for business purposes, and on the weekend, he "probably spend[s] half [his] time there." When asked what activities he does there, Wilson testified:

[T]here's always plenty to work on, and I have my classes that are at night. The continuing education classes start at 6:00 and end at 10:00, and my preparatory classes for the Masters and Journeyman start at 6:00 and end at 9 o'clock on Tuesdays and Thursdays, and I—I work on various political projects there. I'm working on a lot of petition drives right now and I read and I sleep there.

Wilson stated that he does not use the kitchen in the West 34th Street apartment, instead choosing to dine at restaurants in the area. By contrast, Wilson usually only spends Friday and Saturday nights at the Lake Lane house, goes to church in that area, and does yardwork at the Lake Lane house on the weekends before coming back to West 34th Street. Wilson testified that at the time the West 34th Street property was acquired, he intended for that property to be designated as his residence, that he has no plans to sell it, and that he considers it his permanent residence.

Question Number 1 in the jury charge asked: "Do you find by a preponderance of the evidence that David B. Wilson was *not* a resident of Houston Community College (HCC) District II as of November 5, 2013?" (Emphasis in original.) The State did not object to the wording of this question. The jury answered: "David B. Wilson was a resident of HCC District II as of November 5, 2013."

The State moved for judgment notwithstanding the verdict, arguing that Wilson could not enjoy the benefits of having two residences and specifically pointing out that he had received a tax benefit from the residential homestead

exemption claimed on the Lake Lane house.  The State also argued that Wilson could not establish residency in a structure that had been "red-tagged" by the City of Houston as unlawful to occupy as a residence, and because West 34th Street "cannot legally be used as a 'home and fixed place of habitation,' that address does not qualify as a location for which residency may be claimed under the Texas Election Code."

In its final judgment, the trial court stated, "the jury found that the State had not proven that David Wilson was not a resident of the relevant HCC District." The trial court denied all of the State's requested relief.  This appeal followed.

### Jury Charge Error

In its first issue, the State contends that the trial court abused its discretion by "failing to accurately state as a matter of law the requirements to establish residence under the Election Code" in the jury charge.  Specifically, the State argues that the trial court erroneously stated in the charge that the jury was to determine Wilson's residence as of the election date, November 5, 2013, and not as of the statutory date for determining residence—six months prior to the election filing deadline.

Election Code section 141.001(5)(A) provides that to be eligible to be a candidate for public elective office, a person must "have resided continuously in the state for 12 months and in the territory from which the office is elected for six

months immediately preceding . . . the date of the regular filing deadline for a candidate's application for a place on the ballot." TEX. ELEC. CODE ANN. § 141.001(5)(A) (Vernon 2010). The parties agree that the relevant filing deadline in this case was September 21, 2013. Thus, under section 141.001(5)(A), to be eligible for the position of District 2 trustee, Wilson must have resided continuously in District 2 since March 21, 2013.

To preserve error in the jury charge, the party objecting to the charge must "point out distinctly the objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *Id.*; *see also* TEX. R. APP. P. 33.1(a)(1)(A) (requiring, to preserve error, that party make timely objection to trial court that states grounds for ruling sought with sufficient specificity to make court aware of complaint and receive ruling from court). A party preserves error in the charge if it "made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012).

It is undisputed that the State did not object to Question No. 1, which asked the jury to determine Wilson's residency as of the election date—November 5, 2013—instead of his residency as of six months prior to the filing deadline. On appeal, the State argues that no objection was necessary to preserve error because

the issue that it raises concerning Wilson's residency is a matter of statutory construction that is a question of law and, pursuant to the Texas Supreme Court's decision in *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91 (Tex. 1999), no objection is required to preserve the error for appeal "when presented with an issue decided by statute."

In *Holland*, Wal-Mart did not object to an attorney's fees jury question on the basis that such fees were not statutorily recoverable as a matter of law. *Id.* at 93. Instead, Wal-Mart raised the issue for the first time in its motion for judgment notwithstanding the verdict. *Id.* In considering whether Wal-Mart properly preserved its contention for appellate review, the Texas Supreme Court noted that "[t]he availability of attorney's fees under a particular statute is a question of law for the court." *Id.* at 94. The jury's finding concerning the amount of attorney's fees is immaterial to the ultimate legal question of whether such fees are recoverable under the relevant statute, and, as such, the case in *Holland* was not "a case in which the trial court had to resolve a legal issue before the jury could properly perform its fact-finding role." *Id.* In those instances, "a party must lodge an objection in time for the trial court to make an appropriate ruling without having to order a new trial." *Id.* In *Holland*, Wal-Mart's issue concerning availability of attorney's fees was a purely legal question, and, "[b]y asserting nonrecoverability

10

in its motion for j.n.o.v., Wal-Mart gave the trial court ample opportunity to rule on the availability of attorney's fees before an erroneous judgment was rendered." *Id.*

Here, although the State casts its issue as one of statutory interpretation, no construction of Election Code section 141.001(5), concerning the date by which residency must be established, or Election Code section 1.015(a), concerning the definition of "residence," is necessary to answer the question of whether sufficient evidence supported the jury's finding that Wilson was a resident of District 2 as of the applicable date. This is not a case of statutory construction but is instead a case of application of the relevant statutes to the facts. "Whether a person resides in a particular [voting district] according to the election code definition [of residence] is a question of fact." *See In re Peacock*, 421 S.W.3d 913, 917 (Tex. App.—Tyler 2014, orig. proceeding). Determining the particular date by which residency under the Election Code must be established must be resolved *before* the jury can properly perform its fact-finding role of deciding whether residency was established by the applicable date. *See Holland*, 1 S.W.3d at 94. As such, to preserve for appellate review the complaint that the charge stated the incorrect date for determining residency, the State needed to object "in time for the trial court to make an appropriate ruling without having to order a new trial." *See id.*

We therefore hold that because the State did not object to Question No. 1, it has failed to preserve its complaint that the trial court erroneously stated in the jury

11

charge the date by which the jury had to determine Wilson's residency. *See Thota*, 366 S.W.3d at 689.

We overrule the State's first issue.

## Sufficiency of the Evidence

In its second issue, the State argues that Wilson did not present legally and factually sufficient evidence to establish residency by March 21, 2013, or six months before the filing deadline for his application for a place on the ballot.

As we stated above, the charge asked the jury to determine Wilson's residency as of the election date, November 5, 2013.[2] The State did not object to the wording of this question. In the absence of an objection from the parties, we measure the sufficiency of the evidence using the charge actually submitted to the jury. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Badall v. Durgapersad*, 454 S.W.3d 626, 634 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("When the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge."). Thus, we consider whether

---

[2]     Furthermore, as Wilson points out, the State, in its amended petition, alleged, "The State of Texas, through the Harris County Attorney's Office, will show that David B. Wilson was not at the time of the election in November 2013, a resident of HCC District II and is therefore ineligible to serve in that office." The State also began its closing argument to the jury by stating that it only had one question to resolve, and that question was whether it found "by a preponderance of the evidence that David B. Wilson was not a resident of the Houston Community College District 2 as of November 5, 2013."

12

legally and factually sufficient evidence supported the jury's finding that Wilson resided in District 2 as of the election date, November 5, 2013.

## A. *Standard of Review*

In a legal sufficiency review, we credit favorable evidence if a reasonable fact-finder could do so and disregard contrary evidence unless a reasonable fact-finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Brown v. Brown*, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We consider the evidence in the light most favorable to the finding under review, and we indulge every reasonable inference that would support the finding. *City of Keller*, 168 S.W.3d at 822. We sustain a no-evidence point only when the record discloses: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is not more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. When a party attacks the legal sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

In a factual sufficiency review, we consider and weigh all of the evidence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Arias v. Brookstone, L.P.*, 265 S.W.3d 459, 468 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When the appellant challenges an adverse finding on an issue on which it had the burden of proof at trial, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242; *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The jury is the sole judge of the witnesses' credibility, and it may choose to believe one witness over another. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not substitute our judgment for that of the jury. *Id.* "Because it is the jury's province to resolve conflicting evidence, we must assume that jurors resolved all conflicts in accordance with their verdict." *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

The State may bring a quo warranto action, such as the underlying suit, if a person "unlawfully holds or executes a franchise or an office." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 66.001(1) (Vernon 2008); *Newsom v. State*, 922 S.W.2d 274, 278 (Tex. App.—Austin 1996, writ denied) ("Generally, quo warranto actions are brought against individuals who are either public officials *or* officers of public or quasi-public corporations, such as municipalities, school districts and

14

utilities.").  In a quo warranto action, the State "is the real plaintiff and controls the litigation . . . ."  *Newsom*, 922 S.W.2d at 277.  As the plaintiff, the State bears the burden to establish, by a preponderance of the evidence, that the challenged official did not meet the statutory residency requirements.  *See State v. Fischer*, 769 S.W.2d 619, 623 (Tex. App.—Corpus Christi 1989, writ dism'd w.o.j.); *see also* TEX. R. CIV. P. 781 (providing that defendant in quo warranto action "shall be entitled to all the rights in the trial and investigation of the matters alleged against him, as in cases of trial in civil cases in this State").

## B. Evidence of Residency

Election Code section 1.015 defines "residence" as follows:

(a)  In this code, "residence" means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.

(b)  Residence shall be determined in accordance with the common-law rules, as enunciated by the courts of this state, except as otherwise provided by this code.

(c)  A person does not lose the person's residence by leaving the person's home to go to another place for temporary purposes only.

(d)  A person does not acquire a residence in a place to which the person has come for temporary purposes only and without the intention of making that place the person's home.

TEX. ELEC. CODE ANN. § 1.015(a)–(d) (Vernon 2010).

The Texas Supreme Court has held that "residence" is an "elastic" term that is "extremely difficult to define."  *Mills v. Bartlett*, 377 S.W.2d 636, 637 (Tex.

15

1964). The meaning given to residence "depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual." *Id.* "Volition, intention and action are all elements to be considered in determining where a person resides and such elements are equally pertinent in denoting the permanent residence or domicile." *Id.*; *McDuffee v. Miller*, 327 S.W.3d 808, 821 (Tex. App.—Beaumont 2010, no pet.) (noting that voter's stated intent to live inside district on day of election is factor to consider when determining residence). We consider "both the person's expression of intent to remain at, or return to, the alleged residence, as well as the circumstances that led to their presence or absence and those tending to show that the person is likely to remain at or return to the alleged residence." *Woods v. Legg*, 363 S.W.3d 710, 714 (Tex. App.—Houston [1st Dist.] 2011, no pet.). When a person's statements concerning his residence are inconsistent with the facts showing actual residence, "such statements 'are of slight weight' and cannot establish residence in fact." *McDuffee*, 327 S.W.3d at 820 (quoting *In re Graham*, 251 S.W.3d 844, 850 (Tex. App.—Austin 2008, no pet.)).

The fact that a person's motivation for establishing a new residence is to run for public office in the new district is not relevant to the issue of residency. *Bush v. Bell*, 681 S.W.2d 254, 255 (Tex. App.—Houston [1st Dist.] 1984, no writ). If a person designates a homestead outside of the relevant voting district, that fact may

be relevant to a determination of that person's residence, but it is not conclusive. *McDuffee*, 327 S.W.3d at 820; *see also In re Peacock*, 421 S.W.3d at 918 (stating that although homestead designation outside voting district may be relevant to determination of residence, "no one factor is dispositive on the question of one's intended residence"). Similarly, a record of voting outside the particular voting district is a relevant and important fact to be considered. *In re Peacock*, 421 S.W.3d at 917. Other relevant factors include where the person sleeps, stores personal possessions, and generally conducts day-to-day activities. *See In re Graham*, 251 S.W.3d at 851; *see also Woods,* 363 S.W.3d at 715 ("Conduct such as where a person sleeps and keeps personal belongings may support factors such as presence and intent."); *Slusher v. Streater*, 896 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1995, no writ) ("In assessing presence, the cases have considered such conduct as where the voter sleeps and keep clothes and furniture, and the length of time spent in the alleged residence."). "One element alone is insufficient to establish residency; the elements must form a nexus to fix and determine a residence." *Woods*, 363 S.W.3d at 715 (citing *Mills*, 377 S.W.2d at 637).

The State points to several public records that the trial court admitted into evidence—including federal income tax records indicating that Wilson listed the Lake Lane home as his home address through the 2012 tax year, voting registration

17

records indicating that Wilson did not change his address to West 34th Street until April 2013, property tax records indicating that Wilson paid the property taxes on the Lake Lane house after the election, and evidence that the City of Houston "red-tagged" the West 34th Street property, declaring it unlawful to use as a residence—and cites the Tyler Court of Appeals' decision in *Nixon v. Slagle* for the proposition that public records may conclusively establish residency. *See* 885 S.W.2d 658 (Tex. App.—Tyler 1994, no writ).

In *Nixon*, the Democratic candidate for a Texas state senate seat accepted other employment, moved to Travis County, and withdrew from the senate race. *Id.* at 660. Nixon, the Republican candidate for that seat, brought a mandamus proceeding against Slagle, the chairman of the local Democratic party, after he declared the original Democratic candidate ineligible and nominated a replacement candidate. *Id.* at 659. Slagle had based his decision on the former candidate's application for voter's registration in Travis County and a receipt issued by the deputy registrar of Travis County. *Id.* at 661. The Tyler court noted that these documents "unequivocally set forth the fact that [the former candidate] resided in Travis County" and concluded that the documents were public records that "conclusively established" the former candidate's residency in Travis County. *Id.* at 661–62.

As Wilson points out, however, the Tyler court also noted in *Nixon* that the case "involves neither a factual dispute nor a question concerning length of residency." *Id.* at 662. Nixon, for instance, did not argue that the former candidate had not made Travis County his permanent residence, and the former candidate himself "conceded his ineligibility and has supported that ineligibility through public records." *Id.* Thus, in *Nixon*, no party presented any controverting evidence on the question of residency.

That is not the case here, as Wilson strongly disputed the State's arguments and evidence indicating that he did not reside within District 2. Wilson testified that he moved to West 34th Street around the beginning of 2012 and that he lives in an apartment on that property. He acknowledged that the record owner of that property is DSW Equipment, Inc., a corporation owned by his sister, and that he does not have a lease to live in that apartment, although he "recently" started paying rent to DSW. Wilson testified that, in addition to residing at West 34th Street, he also runs a non-profit school that teaches continuing education classes for electricians from that address. Wilson also acknowledged that the property had been "red-tagged" by the City of Houston in January 2014—after the election and after the initiation of this suit—indicating that the property lacked the proper permits to be used as a residence. But he also testified that he had applied for an

19

occupancy permit and had attempted to fix the deficiencies identified by the City as necessary to ensure that the property met current building codes.

Wilson testified that he bought the Lake Lane house for his wife around 1999 or 2000 and that the title to that property is in her name alone. The trial court admitted copies of checks drawn on DSW Equipment's account and signed by Wilson and checks drawn on a joint account owned by Wilson and his wife and signed by Wilson to pay the property taxes on the Lake Lane house for the 2008–2012 tax years. The trial court also admitted a copy of the Harris County Appraisal District's "Real Property Account Information" for the Lake Lane house for the 2013 tax year, and this exhibit reflected that a residential homestead exemption had been claimed on the property. The State also admitted federal income tax returns for the 2008–2012 tax years, jointly filed by Wilson and his wife, that listed the Lake Lane house as their address. Wilson testified that he listed the Lake Lane house as their address because his "wife's residence is more stable than [his]. [He] move[s] every two or three years and change[s his] residence."

Wilson testified that his wife currently lives at the Lake Lane house, and his children lived there as well before they moved away for college. He stated that he usually spends the weekends at the Lake Lane house and the rest of his time at West 34th Street, including sleeping there five nights per week. Wilson testified

that he maintains a separate residence from his wife because, although he wants to be active in Houston politics, she does not want to move from the Lake Lane house.

Wilson testified that West 34th Street is listed as his address on both his voter registration card and his driver's license, and he stated that he receives bank statements, utility bills, credit card statements, prescription drug shipments, tollway bills, political mailings, and magazines at West 34th Street. Wilson stated that he has received most of these items in the mail at this address since spring 2012. The trial court admitted copies of multiple bills, bank and credit card statements, magazines, and other mail that Wilson received at West 34th Street.[3] Wilson testified that, at the time West 34th Street was acquired, it was his intention that the property be designated as his residence, he has no plans of selling the property or not residing there, and it is his "permanent residence."

The State argues that it "presented public record evidence that the City of Houston 'red-tagged' the warehouse at 5600 West 34th Street making it unlawful to inhabit as a residence." In its appellate brief, the State cites to a provision of the

---

[3] On appeal, the State points out that many of these exhibits are dated in December 2013 or in 2014 and thus do not constitute evidence that Wilson resided at West 34th Street as of the requisite date. We agree, although we note that, because the State failed to object to the wording of Question No. 1 in the charge, the requisite date for determining Wilson's residency was November 5, 2013, not March 21, 2013, as the State contends. We therefore do not consider any mail that Wilson received at West 34th Street after November 5, 2013, in our analysis.

21

City of Houston's International Building Code, which purportedly makes it unlawful for any person to occupy any building "in conflict with or in violation of any of the provisions of this code." Texas Rule of Evidence 204 provides a mechanism for a court to take judicial notice of municipal ordinances. TEX. R. EVID. 204. At trial, the State never requested that the trial court take judicial notice of this provision, nor did the court ever indicate that it was taking judicial notice on its own motion, as it is allowed to do under Rule 204. *See id.*; *Metro Fuels, Inc. v. City of Austin*, 827 S.W.2d 531, 532 (Tex. App.—Austin 1992, no writ) ("To enable an appellate court to review a municipal or county ordinance, parties must both comply with the provisions of Rule 204 and make the ordinance part of the trial-court record."). Furthermore, the evidence on this issue presented at trial indicated that the City of Houston "red-tagged" the building in January 2014, two months after the jury charge directed the jury to determine Wilson's residency and after this suit was filed. We conclude that this evidence is not relevant to Wilson's residency as of the election date, November 5, 2013.

Wilson, on the other hand, presented evidence that he started living at the West 34th Street property in early 2012; that he intends for that property to be his residence; that he spends most of his time at that property, including sleeping there five nights a week; that he keeps personal belongings and receives personal mail at that address; and that while he spends two nights a week at the Lake Lane house,

22

he always returns to the West 34th Street property. *See Woods*, 363 S.W.3d at 714 (considering person's expression of intent to remain at or return to residence, as well as circumstances leading to presence or absence and circumstances tending to show person is likely to remain at or return to alleged residence); *McDuffee*, 327 S.W.3d at 820 ("'Residence' 'means domicile, that is, one's home and fixed place of habitation to which one intends to return after any temporary absence.' Factors considered in determining residence include volition, intention, and action."); *Slusher*, 896 S.W.2d at 244 ("In assessing presence, the cases have considered such conduct as where the voter sleeps and keeps clothes and furniture, and the length of time spent in the alleged residence."). This evidence tends to establish that West 34th Street was Wilson's residence, that is, his "home and fixed place of habitation to which [he] intends to return after any temporary absence." *See* TEX. ELEC. CODE ANN. § 1.015(a).

To succeed on a legal sufficiency challenge on appeal as the party that had the burden of proof at trial, the State had to demonstrate that the evidence establishes, as a matter of law, that West 34th Street was not Wilson's residence as of the election date, November 5, 2013. *See Dow Chem. Co.*, 46 S.W.3d at 241. The State presented evidence, primarily in the form of public tax records, indicating that Wilson resided at the Lake Lane house as of the election date. Although this evidence is relevant to the determination of Wilson's residency, it is

23

neither controlling nor conclusive. *See In re Peacock*, 421 S.W.3d at 918 (stating that homestead designation outside of voting district is relevant but not dispositive in determining residency of judicial candidate); *McDuffee*, 327 S.W.3d at 820 (stating same). The State, therefore, did not conclusively establish that Wilson did not reside at West 34th Street on November 5, 2013. Legally sufficient evidence thus supports the jury's verdict. *See Dow Chem. Co.*, 46 S.W.3d at 241.

To succeed on its factual sufficiency challenge, the State had to demonstrate that the adverse finding—here, that Wilson resided at West 34th Street as of November 5, 2103—is against the great weight and preponderance of the evidence. *See id.* at 242. The State and Wilson presented conflicting evidence on this question. Although the State's public-records evidence indicates that Wilson resided at the Lake Lane house, Wilson presented documentary evidence and his own testimony, including direct evidence of his intent, that he actually resided at the West 34th Street property. *See Mills*, 377 S.W.2d at 637 ("The meaning that must be given to [the term 'residence'] depends upon the circumstances surrounding the person involved and largely depends upon the present intention of the individual."); *Woods*, 363 S.W.3d at 714 ("The determination of residence for voting purposes centers on both the person's expression of intent to remain at, or return to, the alleged residence, as well as the circumstances that led to their presence or absence and those tending to show that the person is likely to remain at

24

or return to the alleged residence."). The jury, as the sole judge of credibility, believed Wilson's testimony, and we may not substitute our judgment for that of the fact-finder. *See Golden Eagle Archery*, 116 S.W.3d at 761. We assume that the jurors resolved all conflicts in the evidence in accordance with the verdict. *Figueroa*, 318 S.W.3d at 60. Based upon the factual record in this case, we cannot conclude that the jury's finding that Wilson resided at 5600 West 34th Street on November 5, 2013, was against the great weight and preponderance of the evidence. *See Dow Chem. Co.*, 46 S.W.3d at 242.

We hold that legally and factually sufficient evidence supports the jury's verdict in this case.

We overrule the State's second issue.

### Public Policy Arguments

In its third issue, the State presents several public policy arguments for why Wilson should not be allowed to remain as the District 2 Trustee on the HCC Board.

Specifically, the State argues that Wilson, a Caucasian, used the West 34th Street property, which is in a "predominantly African-American community," to run for the District 2 Trustee position and "denie[d] representation to the African-American residents who live there, pay taxes to HCC, and desire an active HCC." The State also argues that the residency requirements for elected officials should

exceed that of high school students for the purpose of University Interscholastic League participation in sports, that persons should not be allowed to claim the benefits from two "equal" residences, that democracy requires "ethical behavior and honesty" from elected officials, and that Wilson decided against running for an elected position representing his own community and instead "denied voters [in HCC District 2] the same opportunity to elect representatives of their choice."

The State presented only one of these policy arguments to the trial court: in its motion for judgment notwithstanding the verdict, the State argued that Wilson should not be allowed to benefit from having two domiciles and pointed to the fact that Harris County Appraisal District records reflected a residential homestead exemption for the Lake Lane house. The State based this argument solely on the homestead exemption and did not make any argument concerning federal income tax law. The State raised the remainder of its policy arguments for the first time on appeal. To preserve a complaint for appellate review, the record must demonstrate that the complaining party made the complaint to the trial court by timely request, objection, or motion, stating with sufficient specificity the grounds for the requested ruling. *See* TEX. R. APP. P. 33.1(a)(1)(A). To the extent the State did not present four of its five public policy arguments to the trial court, it has not preserved these complaints for appellate review. *See Webb v. Maldonado*, 331 S.W.3d 879, 884 (Tex. App.—Dallas 2011, pet. denied) ("The Webbs did not

26

present their public policy argument to the trial court; therefore, it is not preserved for appeal."); *Boleware v. U.S. Bank N.A.*, 293 S.W.3d 315, 316 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.) (holding that parties waived argument that trial court erred in awarding possession of property to bank as matter of public policy because parties did not first raise complaint in trial court).

With respect to the State's argument that Wilson should not be allowed to claim and benefit from two "equal residences," we have already noted that Wilson's federal income tax returns, which he jointly filed with his wife and on which he listed the Lake Lane house as their home address, and the Harris County Appraisal District records, which listed Wilson's wife as the owner of the Lake Lane house and indicated that a residential homestead exemption had been claimed for the property, could be considered as evidence of Wilson's residence but did not conclusively establish residence. *See In re Peacock*, 421 S.W.3d at 918 (stating that designation of homestead outside particular voting district was relevant to consideration of residence but not dispositive); *McDuffee*, 327 S.W.3d at 820 (stating same). Deriving tax benefits, such as a homestead exemption, from one property does not automatically preclude a finding that the person actually resides at another property. *See* TEX. ELEC. CODE ANN. § 1.015(a) (defining "residence" as "one's home and fixed place of habitation to which one intends to return after any temporary absence"). The jury was entitled to consider the State's tax

27

evidence along with Wilson's testimony that his wife resided at the Lake Lane house, that he only spent two days per week at the Lake Lane house, and that he spent the remainder of his time at the West 34th Street property. Ultimately, the jury resolved the conflict in the evidence in favor of Wilson, finding that he resided at West 34th Street on November 5, 2013, a finding that, we have already held, was supported by legally and factually sufficient evidence.

The fact that Wilson has a community property interest in the Lake Lane house, derives at least some tax benefits from his wife's ownership of that house, and spends some time at that house does not require us to overturn the jury's factual finding that Wilson actually resided at the West 34th Street property. We further note that even if Wilson had moved to the West 34th Street property solely to meet the residency requirements for running for public office in HCC District 2, that motivation is not relevant to the ultimate question of where he resides. *See Bush*, 681 S.W.2d at 255. We therefore conclude that the only public policy argument preserved by the State for appellate review does not justify reversal of the trial court's judgment in favor of Wilson.

We overrule the State's third issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Lloyd.